**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 10 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

PAULINE DOYAL,

        Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of the Social Security
Administration,

        Defendant-Appellee.

No. 02-7106

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 01-CV-400-P)**

---

Submitted on the briefs:

Catherine Cain Taylor of Perrine, McGivern, Redemann, Reid, Berry & Taylor,
P.L.L.C., Tulsa, Oklahoma, for Plaintiff-Appellant.

Sheldon J. Sperling, United States Attorney, Cheryl Triplett, Assistant United
States Attorney, Tina M. Waddell, Regional Chief Counsel, Region VI, Michael
McGaughran, Deputy Regional Chief Counsel, and Steven A. Ford, Assistant
Regional Counsel, Office of the General Counsel, Social Security Administration,
Dallas, Texas, for Defendant-Appellee.

---

Before **HARTZ** , **O'BRIEN** , and **McCONNELL** , Circuit Judges.

---

**McCONNELL** , Circuit Judge.

Plaintiff-appellant Pauline Doyal appeals from an order of the district court affirming the Commissioner's decision denying her application for Supplemental Security Income benefits (SSI).[1] Appellant filed for SSI benefits in April 1997. She alleges disability based on obesity, chronic low back and hip pain, fasciitis affecting the hands and resulting in decreased grip strength, mental problems, and a skin impairment. The agency denied her applications initially and on reconsideration.

On November 19, 1998, appellant received a de novo hearing before an administrative law judge (ALJ). The ALJ denied Ms. Doyal's claim for SSI benefits. On administrative appeal, the Appeals Council vacated the ALJ's decision and remanded to the ALJ for further development of the record and consideration of a number of issues.[2]

---

[1]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[2]    Specifically, the ALJ was to "obtain additional evidence concerning the claimant's apparent mental and bilateral hand impairments and inflammatory dermatitis; to evaluate the claimant's subjective complaints and provide rationale [sic] in accordance with disability regulations pertaining to evaluation of symptoms; to evaluate the claimant's mental impairments in accordance with 20 C.F.R. § 416.920a; to give further consideration to the claimant's maximum residual functional capacity; if necessary, to obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments; and to

(continued...)

The ALJ held a second hearing on December 12, 2000, at which additional evidence was received. He subsequently entered a decision again denying Ms. Doyal's claim for SSI benefits, determining that she retained the residual functional capacity (RFC) to perform her past relevant work as a housecleaner and sewing machine operator. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision for purposes of review.

We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989) (quotations omitted).

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *Id.* at 751 & n.2. Ms. Doyal's claim was denied at step four of this sequential process.

---

[2](...continued)
obtain supplemental evidence from a vocational expert." Aplt. App. at 30.

Ms. Doyal raises two basic arguments on appeal. First, she argues that the ALJ's analysis of her RFC was deficient. Second, she contends that the ALJ failed to give proper consideration to the opinion of her treating physician.

I.

Ms. Doyal words her first issue broadly, contending she "does not retain the [RFC] to perform substantial gainful activity." Aplt. Br. at 7. She makes no specific argument concerning sufficiency of the evidence to support the ALJ's finding that she can meet the demands of her past relevant work. Instead, she targets the ALJ's alleged failure to make specific findings concerning these demands.[3]

Ms. Doyal's argument is based on our decision in *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996). In that case, we noted the three phases of evaluation the ALJ must complete as part of step four of the sequential analysis:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase

_____

[3] She does allude briefly to a deficiency in the vocational expert's testimony concerning the specifics of the demands of her past relevant work, but her argument on this point appears to be designed primarily to forestall any claim that the ALJ satisfied the procedural requirements by simply incorporating the vocational expert's testimony. *See* Aplt. Br. at 9.

two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Id.* at 1023 (citations omitted).

As Ms. Doyal concedes, the ALJ made the RFC findings required by phase one of this analysis. Phase two required him to make specific findings concerning the physical and mental demands of her past relevant work. The ALJ stated:

> The vocational expert testified that the claimant's past relevant work as a housecleaner and sewing machine operator would be classified as light and unskilled, and her past relevant work as an activities director would be classified as light and semiskilled. . . . The vocational expert indicated that the claimant's past relevant work as a housecleaner and sewing machine operator did not require lifting more than 20 pounds, walking for prolonged periods, or performing tasks requiring bilateral normal grip strength.

Aplt. App. at 34.

Phase three required the ALJ to reach a conclusion concerning whether Ms. Doyal could satisfy the demands of her past relevant work, based on his findings in phases one and two. The ALJ concluded that she could:

> The impartial vocational expert offered testimony indicating that given her particular residual functional capacity, the claimant can perform past relevant work. The vocational expert added that there is no variance between the description of these jobs found in the Dictionary of Occupational Titles and the claimant's residual functional capacity (S.S.R. 00-4p). Because Ms. Doyal's past relevant work did not require the performance of work activities precluded by her medically determinable impairments, I conclude that she is able to perform her past relevant work as a housecleaner and sewing machine operator.

*Id.*

Ms. Doyal complains that the ALJ simply relied on the opinion of the vocational expert (VE) as to the demands of her past relevant work, without making the proper findings required by the remaining phases of the analysis. It is improper for an ALJ to make RFC findings and then to delegate the remaining phases of the step four analysis to the vocational expert, because in such cases, "the remainder of the step four assessment takes place in the VE's head" and "we are left with nothing to review." *Winfrey*, 92 F.3d at 1025. That is not what occurred here, however. The ALJ did not delegate the analysis to the vocational expert; instead, he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis. There was nothing improper about this. An "ALJ may rely on information supplied by the VE at step four." *Id.*

While the ALJ did not use the phrase "I find" in connection with his conclusion in the second phase of the analysis, the form of words should not obscure the substance of what the ALJ actually did. The ALJ's findings were adequate here to satisfy the step four requirements articulated in *Winfrey*.

II.

Ms. Doyal also contends that the ALJ improperly discounted the opinion of her physician, Dr. Webb, concerning her RFC. In a medical source statement, Dr. Webb opined that Ms. Doyal could frequently lift or carry no more than ten

pounds, could stand or walk no more than four hours in a day or thirty minutes continuously, could sit for no more than two hours a day or continuously, and should never climb, stoop, kneel, crouch, crawl, or handle or finger objects. Aplt. App. at 340-41.

This opinion represents a considerably more restricted view of Ms. Doyal's capabilities than the RFC values assigned by the ALJ. The ALJ found that Ms. Doyal was capable of lifting or carrying a maximum of twenty pounds and carrying up to ten pounds on a regular basis. The only limitations he placed on her ability to perform the other exertional tasks associated with light work were that she not walk for prolonged periods (over fifteen minutes at a time) and that she not perform tasks that require normal grip strength bilaterally.

The ALJ dealt briefly in his decision with Dr. Webb's statement, along with another RFC opinion completed by an occupational therapist. He stated:

> The medical record contains opinions from treating and examining physicians indicating that the claimant has restricted ability to remain on her feet for prolonged periods and lift and carry (Exhibits 6F [occupational therapist RFC], 16F [Dr. Webb's RFC]). It is noted that the claimant had a Functional Capacity evaluation in 1996, just before she was discharged from her pain management program. That evaluation indicated that she was able to perform selected light work; however, the evaluator commented, "It is felt that Ms. Doyal's performance in the Program and Functional Capacities Evaluation is not a true indication of her abilities, and she is capable of more." It was noted that the claimant had had good participation in the pain management program but showed little change in actual behavior. For example, she continued to walk with a crutch. The claimant was described as "extremely disability-focused." The discharge report

stated, "Ms. Doyal appears to be receiving secondary gain from her pain behaviors and disabilities, and is thereby achieving more benefit in continuing such behaviors rather than by discontinuing them."

*Id.* at 33-34.

Under Social Security Administration regulations, the opinion of a treating physician concerning the nature and extent of a claimant's disability is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(d)(2). An ALJ may disregard a treating physician's opinion, however, if it is not so supported. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994). In all cases, the regulations require that the ALJ "give good reasons" in the notice of determination or opinion for the weight that is given the treating physician's opinion. 20 C.F.R. § 416.927(d)(2). *See Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (quotation omitted) (requiring the ALJ to supply "specific, legitimate reasons" for rejecting the opinion of the treating physician).

Ms. Doyal contends that the ALJ failed to give Dr. Webb's opinion concerning her RFC the controlling weight to which it was entitled, and in any event, failed to supply specific, legitimate reasons for rejecting it. The threshold question is whether Dr. Webb was in fact a "treating physician" within the

meaning of the regulations.  If not, his opinion was not entitled to the presumption of controlling weight accorded to the properly supported opinion of a treating physician.  20 C.F.R. § 416.927(d), (d)(2).

The treating physician's opinion is given particular weight because of his "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(d)(2).  This requires a relationship of both duration and frequency. "The treating physician doctrine is based on the assumption that a medical professional *who has dealt with a claimant and his maladies over a long period of time* will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (emphasis added).  As the Supreme Court recently observed, "the assumption that the opinions of a treating physician warrant greater credit that the opinions of [other experts] may make scant sense when, for example, the relationship between the claimant and the treating physician has been of short duration." *Black & Decker Disability Plan v. Nord*, No. 02-469, slip op. at 9, 2003 WL 21210418 (U.S. May 27, 2003).  Moreover, a longstanding treatment relationship provides some assurance that the

opinion has been formed for purposes of treatment and not simply to facilitate the obtaining of benefits.

A physician's opinion is therefore not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as her treating source. Absent an indication that an examining physician presented "the *only* medical evidence submitted pertaining to the relevant time period," the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion. *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995) (emphasis added).

In determining whether a physician's opinion is entitled to controlling weight, the Social Security Administration regulations look to the "[l]ength of the treatment relationship and the frequency of examination," and the "[n]ature and extent of the treatment relationship." 20 C.F.R. § 416.927(d)(2)(i), (ii). A physician's opinion is deemed entitled to special weight as that of a "treating source" when he has seen the claimant "a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment," taking into consideration "the treatment the source has provided" and "the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories." *Id.*

-10-

Ms. Doyal's assertion that Dr. Webb served as her treating physician is based on evidence from two divergent periods, in 1993 and again in 2000. We consider, first, the 1993 medical history. The medical record contains exactly one record prepared by Dr. Webb during that period. On November 9, 1993, Dr. Webb referred Ms. Doyal for whirlpool treatments. Aplt. App. at 222. The referral form does not indicate whether Dr. Webb examined Ms. Doyal prior to prescribing the treatments, or whether he conducted any follow-up during or after the treatments. Physical therapy notes for November and December 1993 list Dr. Webb as Ms. Doyal's physician, but there is no indication of any specific treatment he provided during this time period.

In an initial disability report Ms. Doyal completed for the agency, she was asked to identify her treating physicians. She listed ten physicians, physicians' assistants, and physical therapists she had seen, dating back to 1993, but did not mention Dr. Webb. *Id.* at 173-85. On reconsideration, she was asked whether she had seen any physicians since filing her claim. She did not mention Dr. Webb. *Id.* at 208.

At Ms. Doyal's hearing on November 19, 1998, she was asked to identify her primary treating physicians. She listed four doctors, but never mentioned Dr. Webb. *Id.* at 102. When asked if she had seen any other doctors recently, she identified Dr. Tidwell, but again did not mention Dr. Webb. *Id.*

-11-

Turning to the period beginning in 2000, the record contains a record of a single visit to Dr. Webb, on September 20, 2000. *Id.* at 342. During this visit, Dr. Webb apparently examined Ms. Doyal and prepared a list of diagnoses. There is no indication, however, that he provided any treatment.

At the December 12, 2000 hearing, Ms. Doyal stated she had recently started seeing Dr. Webb. *Id.* at 67. When asked how many times she had seen him, Ms. Doyal provided details of her daughter's past work for Dr. Webb, of an occasion when she shook Dr. Webb's hand and he asked her what had happened to her hands, and of some advice he gave her to stop smoking, along with some samples of Nicotrol. *Id.* at 67-68. There was no indication these "visits" occurred in an office environment, pursuant to an appointment, or were anything but social encounters. Ms. Doyal conceded that the record contained only a single medical record, from the September 20, 2000 visit, but she claimed to have seen Dr. Webb on other unspecified occasions. *Id.* at 68. It is not clear whether these other unspecified occasions were the social visits she mentioned, but no medical evidence was presented to document any visits or consultations other than the September 20, 2000 visit.

The record thus fails to reflect that Dr. Webb was Ms. Doyal's treating physician in either 1993 or 2000. This being the case, the ALJ was not required to give Dr. Webb's opinion controlling weight, or to give specific reasons for not

giving it controlling weight. To be sure, the Social Security Administration "may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals ( *e.g.* twice a year) to be your treating source *if* the nature and frequency of the treatment or evaluation is typical for your condition(s)." 20 C.F.R. § 416.902 (definitions) (emphasis added). But in this case, there was no showing that Ms. Doyal's conditions required her to see Dr. Webb only twice in seven years. "We will not consider an acceptable medical source to be your treating source if your relationship with the source is [based] solely on your need to obtain a report in support of your claim for disability." *Id.* The ALJ could reasonably have concluded that Dr. Webb's September 20, 2000 report fulfilled no purpose other than to support a claim of disability.

Even though Dr. Webb was not a treating physician, the ALJ was still required to consider his opinion, *see* 20 C.F.R. § 416.927(d) ("Regardless of its source, we will evaluate every medical opinion we receive"); SSR 96-5P, 1996 WL 374183, at *1 ("[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored."), and to provide specific, legitimate reasons for rejecting it, *Drapeau*, 255 F.3d at 1213.

The regulations required the ALJ to consider several specific factors in weighing a medical opinion. *See* 20 C.F.R. § 416.927(d)(1)-(6). The ALJ rejected Dr. Webb's opinion in reliance on the fourth such factor, consistency of

the opinion with the evidence as a whole.      *Id.* § 416.927(d)(4).  Substantial

evidence supports his decision on this point, and we conclude that the ALJ's

rejection of Dr. Webb's opinion was properly supported in the record.

## III.

The judgment of the United States District Court for the Eastern District of

Oklahoma is AFFIRMED.