**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 1, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

GREG SITSLER,

       Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

       Defendant-Appellee.

No. 05-5197
(D.C. No. 04-CV-429-J)
(N.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **HENRY, BRISCOE,** and **MURPHY**, Circuit Judges.

---

Plaintiff-appellant Greg Sitsler appeals from the order entered by the

district court affirming the Social Security Commissioner's decision denying his

applications for disability insurance benefits and supplemental security income

benefits under the Social Security Act. Exercising jurisdiction under 42 U.S.C.

---

\*     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

§ 405(g) and 28 U.S.C. § 1291, we reverse and remand for further proceedings.

## I.

In a decision issued in December 2003, the administrative law judge (ALJ) denied plaintiff's applications for benefits at step five of the five-step sequential evaluation process for determining disability, finding that: (1) plaintiff suffered from severe physical impairments as a result of his "status post heat stroke," Aplt. App., Vol. II at 21; (2) plaintiff suffered from a severe mental impairment in the form of an "adjustment disorder," *id.*; (3) plaintiff did not retain the residual functional capacity (RFC) to perform the heavy physical exertion requirements of his past relevant work as a concrete finisher; but (4) plaintiff retained the RFC to perform the physical exertion requirements of some medium work; and (5) based on the responses to interrogatories submitted by the vocational expert, there are a significant number of jobs in the national economy that plaintiff can perform.

In March 2004, the Appeals Council denied plaintiff's request for review of the ALJ's decision. Plaintiff then filed a complaint in the district court. In September 2005, the district court entered an order and a related judgment affirming the denial of plaintiff's applications for benefits. This appeal followed.

## II.

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). In reviewing the ALJ's decision,

"we neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, we review the ALJ's decision only "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal*, 331 F.3d at 760.

In this appeal, plaintiff claims the ALJ committed reversible error by failing to properly consider the medical opinions of Dr. Minor W. Gordon, the psychologist who performed two consultative examinations and diagnosed plaintiff as suffering from a mental impairment. We agree with plaintiff that the ALJ erred by failing to explain in his decision why he rejected Dr. Gordon's opinions regarding the work limitations caused by plaintiff's mental impairment. We therefore reverse the district court and remand this matter to the Commissioner for further proceedings.

**A. Dr. Gordon's Opinions.**

At the hearing before the ALJ, the medical expert called by the ALJ testified that, in his opinion, plaintiff did not suffer from a medically determinable physical impairment. The expert suggested, however, that plaintiff may have a mental impairment. Based on the expert's testimony and the arguments of plaintiff's counsel, the ALJ determined that plaintiff should be evaluated by a psychologist, with the evaluation to include a Minnesota Multiphasic Personality Inventory test (MMPI).

The psychological evaluation was subsequently performed by Dr. Gordon, and Dr. Gordon prepared a report dated March 10, 2003. In his report, Dr. Gordon diagnosed plaintiff as suffering from an "[a]djustment disorder with depressed mood, moderate, secondary to his general physical condition to include chronic pain." Aplt. App., Vol. II at 232. Dr. Gordon also completed a "Mental Medical Source Statement" for plaintiff. In his statement, Dr. Gordon opined that plaintiff's mental impairment had resulted in a "Moderate Limitation" on plaintiff's "ability to maintain attention and concentration for extended periods." *Id.* at 235. According to Dr. Gordon's statement, this meant that plaintiff's mental impairment would "[a]ffect[] but . . . not preclude [his] ability to perform basic work functions." *Id.* at 234.

In a letter dated April 10, 2003 to vocational expert Cheryl Mallon, the ALJ subsequently asked Ms. Mallon to assume a hypothetical person with the same general characteristics and limitations as plaintiff, which limitations included the "need[] to avoid mandatory attention and concentration for extended periods." *Id.* at 100. In a letter dated May 1, 2003, Ms. Mallon responded to the ALJ's hypothetical question, stating that such a person could perform four different jobs that exist in the national economy. *Id.* at 102.

After receiving copies of Ms. Mallon's letter and Dr. Gordon's psychological evaluation, plaintiff's counsel sent a letter to the ALJ in which he objected to the limited scope of Dr. Gordon's evaluation. Specifically, plaintiff's

counsel pointed out that Dr. Gordon had not administered an MMPI test as part of his evaluation. *Id.* at 108. Although there is no correspondence in the record setting forth the ALJ's response to plaintiff's counsel's objection, the ALJ apparently agreed with plaintiff's counsel's assertion that Dr. Gordon's first evaluation was deficient, because arrangements were subsequently made for Dr. Gordon to perform a second psychological evaluation.

As part of his second psychological evaluation, Dr. Gordon administered an MMPI test, and he also prepared a written report dated September 15, 2003. In his report, Dr. Gordon once again diagnosed plaintiff as suffering from an "[a]djustment disorder with depressed mood." *Id.* at 282. However, while Dr. Gordon assessed this disorder as being "moderate" in his first report, *id.* at 232, he assessed the disorder as being "moderate to severe" in his second report, *id.* at 282. In addition, as part of the second evaluation, Dr. Gordon also prepared another "Mental Medical Source Statement." In his statement, Dr. Gordon reiterated his prior opinion that plaintiff's mental impairment had resulted in a "Moderate Limitation" on plaintiff's "ability to maintain attention and concentration for extended periods." *Id.* at 284. Dr. Gordon also added additional limitations that were not included in his first report, however, and the new limitations included a "Moderate Limitation" rating for: (1) "[t]he ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," *id.*; (2) "[t]he ability to make simple work related

decisions," *id.*; and (3) "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," *id.*[1]

After Dr. Gordon performed his second evaluation and issued his second report, the ALJ did not submit a new hypothetical question to a vocational expert. Instead, in December 2003, the ALJ issued his written decision denying plaintiff's applications for benefits, and the ALJ addressed both of Dr. Gordon's reports in his decision. The ALJ discussed the reports as follows:

> The claimant underwent consultative psychological evaluation on March 3, 2003, by Minor Gordon, Ph.D. Dr. Gordon noted after mental status examination that the claimant appeared to have an adjustment disorder secondary to his general physical condition to include chronic pain. . . . Dr. Gordon also completed a medical course statement indicating virtually no limitations in mental functioning, with the exception of a moderate limitation in the claimant's ability to maintain attention and concentration for extended periods of time . . . .
>
> The claimant underwent another evaluation by Dr. Gordon on September 15, 2003, specifically to undergo personality testing. The claimant was administered the [MMPI] and produced a valid protocol. Dr. Gordon noted that the claimant's profile revealed preoccupation with bodily function and did not feel the claimant was suffering from a true conversion disorder, but most likely had a fear of being misunderstood. Dr. Gordon stated that the claimant was

---

[1] Dr. Gordon also added a "Moderate Limitation" rating for "[t]he ability to set realistic goals or make plans independently of others." Aplt. App., Vol. II at 285. Plaintiff has not asserted any error with regard to the ALJ's treatment of this limitation, however, and we therefore do not address it.

> preoccupied and quite concerned about being perceived by others as malingering or out for some type of secondary gain. . . .
>
>     . . . .
>
> . . . In both of Dr. Gordon's reports, the claimant stated that he had never sought treatment from a mental health professional. Dr. Gordon noted that the claimant had been prescribed Prozac in the past, but did not take it on any type of consistent basis . . . .

*Id.* at 22, 23.

We note two things about the ALJ's discussion of Dr. Gordon's evaluations. First, the ALJ failed to mention that Dr. Gordon stated in his second report that it did not appear to him that plaintiff was malingering or out for some type of secondary gain. *Id.* at 281. Second, and more importantly for purposes of this appeal, while the ALJ noted the limitation that Dr. Gordon included in his first medical source statement regarding plaintiff's ability to maintain attention and concentration, the ALJ did not discuss the additional limitations that Dr. Gordon set forth in his second medical source statement. Moreover, the latter omission was also carried over to the ALJ's RFC assessment, as the ALJ only limited plaintiff from performing jobs that require "mandatory attention and concentration for extended periods." *Id.* at 23.

As noted above, in assessing plaintiff's RFC, the ALJ did not submit a new hypothetical question to a vocational expert. Instead, the ALJ relied on the response that he had previously received from vocational expert Cheryl Mallon, *id.* at 24-25, and that response was based on a hypothetical question that did not

include any of the mental impairment limitations that are set forth in Dr. Gordon's second report, *id.* at 100, 102.  Indeed, Ms. Mallon's response was prepared several months before Dr. Gordon performed his second psychological evaluation.

We agree with plaintiff that the ALJ committed reversible error by failing to explain in his decision why he rejected the additional limitations that Dr. Gordon included in his second medical source statement.  Soc. Sec. R. 96-8p specifically provides that "[t]he RFC assessment must always consider and address medical source opinions.  *If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted*."  1996 WL 374184, at *7 (emphasis added); *see also Conrad v. Barnhart*, 434 F.3d 987, 991 (7th Cir. 2006) ("SSR 96-8p requires that medical source opinions must always be considered and addressed by the ALJ in the RFC assessment, and if it conflicts with the ALJ's conclusions then the ALJ must explain why it was not adopted.").  We also note that Soc. Sec. R. 96-5p is on point for purposes of this case, as it provides as follows:

> A medical source's statement about what an individual can still do is medical opinion evidence that an adjudicator must consider . . . when assessing an individual's RFC. . . .  Adjudicators must weigh medical source statements under the rules set out in 20 CFR 404.1527 and 416.927, *providing appropriate explanations for accepting or rejecting such opinions*.

1996 WL 374183, at *5 (emphasis added).

Here, there is no question that Dr. Gordon's second medical source statement constitutes an opinion from a medical source. *See* 20 C.F.R. § 404.1513(a)(2) (stating that "[a]cceptable medical sources [include] . . . [l]icensed or certified psychologists"); *id.*, § 404.1527(a)(2) (stating that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your . . . mental restrictions"); Soc. Sec. R. 96-5p, 1996 WL 374183, at *4 ("Medical source statements are medical opinions submitted by acceptable medical sources, including . . . consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis.") (footnote omitted).

Because the ALJ's RFC assessment did not include the additional limitations imposed by Dr. Gordon in his second report, it is also clear that the ALJ's RFC assessment conflicted with Dr. Gordon's opinions. As a result, we conclude that the ALJ committed reversible error by failing to explain in his decision why he did not adopt Dr. Gordon's opinions. The ALJ's error in this regard is especially significant given that Dr. Gordon's opinions were uncontroverted. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as

significantly probative evidence he rejects."); *Hamlin v. Barnhart*, 365 F.3d 1208, 1215, 1219 (10th Cir. 2004) ("An ALJ must evaluate every medical opinion in the record," and an "ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability"); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) ("[W]hen . . . an ALJ does not provide any explanation for rejecting medical evidence, we cannot meaningfully review the ALJ's determination.").

The judgment of the district court is REVERSED, and this case is REMANDED to the district court with instructions to remand the case to the Commissioner for further proceedings before the ALJ. Specifically, the ALJ shall explain in writing why he did not adopt the additional limitations that Dr. Gordon included in his second medical source statement. Alternatively, the ALJ may reassess plaintiff's RFC and, if necessary, submit a new hypothetical question to a vocational expert. We emphasize that no particular result is dictated by our remand.

Entered for the Court

Michael R. Murphy
Circuit Judge