**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 10, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SHARI A. HARRIS,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
Social Security Administration,

        Defendant-Appellee.

No. 07-7110
(D.C. No. 6:05-cv-234-FHS-SPS)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **McKAY**, and **BRISCOE**, Circuit Judges.

---

Shari A. Harris appeals from an order entered by the district court affirming

the Social Security Commissioner's denial of her application for disability

insurance benefits under Title II of the Social Security Act.  Exercising

jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**I.**

Ms. Harris protectively filed her application for disability benefits in August 1996, almost twelve years ago. The case has been remanded for further proceedings on two separate occasions by, first, the Appeals Council, and, second, the district court. This lengthy procedural history is summarized by the magistrate judge in his report and recommendation to the district court, *see* Aplt. App., Vol. 2, Tab 6 at 3-4, and we need not repeat it here.

Ms. Harris was last insured for disability benefits on December 31, 2002, when she was forty-two years old. She has a high school education and was previously employed as a factory worker. She alleges that she became disabled in March 1996 due to lower back problems, and her counsel has summarized her pertinent medical history as follows:

> 1. On August 23, 1995, Harris had a MRI scan of the lumbar spine that showed congenital spinal stenosis, dessication of the lumbar discs at L3-4 and L4-5, and advanced central extruded disc herniation at L4-5.
>
> 2. On September 6, 1995, Harris had a hemilaminectomy with foraminotomy at L3-4 and L4-5 with a diskectomy at L4-5. [The surgery was performed by Dr. Don F. Rhinehart, a neurosurgeon.]
>
> 3. On November 13, 1997, Harris had a lumbar MRI that showed post surgical change at L4-5 with epidural fibrosis with the possibility of a very mild annulus rupture at L3-4.
>
> [4.] On August 1, 2000, Harris had a lumbar MRI that showed post surgical enhancing fibrosis on the posterior aspect of L4-5.

[5.] Dr. J. T. O'Connor treated Harris from August 7, 1995, until 2000.

[6. In July 2000,] Dr. O'Connor completed a Medical Source Statement describing Harris as having significant restrictions in her ability to perform work-related activities.

Aplt. Br. at 5-6 (citations to the administrative record omitted). As further background, we note that the medical records of Dr. O'Connor and Dr. Rhinehart were thoroughly and accurately summarized by the magistrate judge in his report and recommendation, *see* Aplt. App., Vol. 2, Tab 6 at 4-6, and we will assume a working familiarity with the magistrate judge's medical summary.

After Ms. Harris's application for disability benefits was denied initially and on reconsideration, a de novo hearing was held before an Administrative Law Judge (ALJ) in February 2004. In a decision dated April 15, 2004, the ALJ subsequently denied Ms. Harris's application for disability benefits at step five of the five-step sequential evaluation process[1] for determining disability, finding that: (1) she suffers from severe physical impairments due to her "status post lumbar disc excision," Aplt. App., Vol. 1, Tab 3 at 503; (2) her allegations regarding her physical limitations are not totally credible; (3) on and before December 31, 2002, she had the residual functional capacity (RFC) to perform the full range of sedentary work, as defined in 20 C.F.R. § 404.1567(a); (4) because

---

[1]    The five-step sequential evaluation process is set forth in 20 C.F.R. § 404.1520(a)(4).

vocational testimony at her prior hearings indicated that all of her past relevant work was performed at more than the sedentary level of exertion, she was unable to perform any of her past relevant work; but (5) applying the Medical-Vocational Guidelines[2] at step five to determine whether she could perform "other work" that exists in significant numbers in the national economy, and "[b]ased on an exertional capacity for sedentary work, and [her] age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 201.28," Aplt. App., Vol. 1, Tab 3 at 503.

In April 2005, the Appeals Council denied Ms. Harris's request for review of the ALJ's decision. Ms. Harris subsequently filed a complaint in the district court. In October 2007, the district court entered an order adopting the report and recommendation of the magistrate judge, and the court therefore affirmed the denial of Ms. Harris's application for disability benefits. This appeal followed.

## II.

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). In reviewing the ALJ's decision, "we neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir.

---

[2] The Medical-Vocational Guidelines are set forth in 20 C.F.R. pt. 404, subpt. P, app. 2.

1991).  Instead, we review the decision only to determine whether the correct

legal standards were applied and whether the ALJ's factual findings are supported

by substantial evidence in the record.  *See Doyal*, 331 F.3d at 760.  "Substantial

evidence is such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion."  *Id.* (quotation omitted).

In this appeal, Ms. Harris claims the ALJ committed reversible error by:

(1) failing to properly evaluate the opinions of her treating physician,

Dr. O'Connor; and (2) failing to properly evaluate the credibility of her

allegations regarding her physical limitations.  We disagree.

First, we agree with the magistrate judge that the ALJ performed a legally

proper treating physician analysis that is supported by substantial evidence in the

administrative record.[3]  We therefore adopt the following reasoning of the

magistrate judge:

> The ALJ specifically addressed the conclusions Dr. O'Connor
> expressed [in his July 2000] medical source statement and found they
> were not entitled to controlling weight.  *See Langley v. Barnhart*,
> 373 F.3d 1116, 1119 (10th Cir. 2004) (noting that a medical opinion
> from a treating physician is entitled to controlling weight "if the
> opinion is well-supported by medically acceptable clinical and
> laboratory diagnostic techniques" and "consistent with other
> substantial evidence in the record"), *quoting Watkins v. Barnhart*,
> 350 F.3d 1297, 1300 (10th Cir. 2003) [quotations omitted].  The ALJ

---

[3]  In his report and recommendation, the magistrate judge misspelled
Dr. O'Connor's name, spelling it as "O'Conner."  To avoid confusion, we have
corrected this mistake in the passages that we have quoted from the report and
recommendation.

observed, for example, [that] Dr. O'Connor's conclusions on the medical source statement were inconsistent with the opinions of Dr. Philip McCown, a medical expert who testified at the claimant's 1998 administrative hearing, Dr. Rhinehart's opinion, and a formal functional capacity assessment the claimant underwent in 1996. Although all of these were prior to Dr. O'Connor's assessment, the ALJ noted there was not significant change shown between the claimant's MRIs from 1995 to 2000. The ALJ also discussed the factors set forth in 20 C.F.R. § 404.1527 and determined that Dr. O'Connor's opinions were not entitled to "as much weight as the other evidence of record." *Id.* at 1119 ("Even if a treating physician['s] opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300 [quotation omitted]. In particular, the ALJ noted: (i) that Dr. Rhinehart was the claimant's treating neurosurgeon for her back and that Dr. O'Connor only provided treatment symptomatically for the claimant's low back pain; (ii) that the claimant had not seen Dr. O'Connor for several months before her [July] 2000 visit and that she was not examined by Dr. O'Connor at the visit; and, (iii) that Dr. O'Connor had knowledge of Dr. Rhinehart's opinion from December 1995 that the claimant could perform work at a lighter capacity when he assessed the claimant's limitations in [July] 2000. Thus, the ALJ clearly rejected Dr. O'Connor's opinions and provided reasons for doing so. *Watkins*, 350 F.3d at 1301 ("[I]f the ALJ rejects the opinion completely, he must give []specific, legitimate reasons[] for doing so.")[.]

Aplt. App., Vol. 2, Tab 6 at 6-8 (citations to record and footnotes omitted).[4]

---

[4]     We recognize that, as noted by the magistrate judge, "[n]ot all of the ALJ's reasons for rejecting Dr. O'Connor's opinions were good ones." Aplt. App., Vol. 2, Tab 6 at 8 n.3. In particular, "contrary to the ALJ's findings, Dr. O'Connor's treatment notes from his [July] 2000 visit with the claimant included objective findings from an examination." *Id.*; *see also id.*, Vol. 1, Tab 3 at 586 (medical record documenting that Dr. O'Connor saw Ms. Harris on July 27, 2000, for "a checkup" and reported that "[s]he is tender in the low back and has a radiculopathy consistent with an L4-5, nerve root pain"). However, this

(continued...)

Second, we agree with the magistrate judge that the ALJ's adverse credibility finding is supported by substantial evidence in the record. As the magistrate judge explained after summarizing the highly deferential standard of review that is applied to an ALJ's credibility determinations, *id.* at 8-9:

> The ALJ noted the relevant factors set forth in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987) and cited evidence in support of his reasons for finding the claimant's subjective complaints not credible. He noted that the claimant received infrequent treatment and failed to return to Dr. Rhinehart when her pain became more severe even though he advised her to do so, and she failed to seek any other orthopedic or neurologic treatment. The ALJ also indicated that the claimant's tests showed only mild abnormalities. Although she had a brief period of time in 1997 that she rated her pain as an eight on a scale of ten, after therapy she rated her pain at a three. The ALJ discussed how the claimant was not taking any pain medication and indicated this to her physicians. He indicated that although the claimant had alleged she was significantly limited in her ability to stand and walk and with respect to her ability to sit, her physicians had recommended she engage in a walking program. The ALJ

---

[4](...continued)
oversight does not undercut the other valid reasons the ALJ relied on to reject Dr. O'Connor's opinions. In addition, it appears the ALJ understated the amount of time that had passed between Dr. O'Connor's last treatment of Ms. Harris and his preparation of the July 2000 Medical Source Statement. In his decision, the ALJ stated that "after examination on March 19, 1999, claimant did not return to Dr. O'Connor until 16 months later, when claimant returned July 27, 2000 and asked Dr. O'Connor to complete th[e] disability assessment." *Id.*, Vol. 2, Tab 6 at 498 (citing Admin. R. Exs. 14F/1 and 16F). The March 19, 1999 medical record (Exhibit 14F/1) was not prepared by Dr. O'Connor, however. Instead, it was prepared by a doctor with the initials "LDM." *Id.* at 463. As a result, the chronologically closest medical record of Dr. O'Connor to the July 2000 Medical Source Statement is a medical record dated December 19, 1997, *id.* at 450, although Dr. O'Connor also completed an untitled questionnaire on August 4, 1998, *id.* at 446-49.

viewed the claimant's report of daily activities as performed on a voluntary basis and not because of any medical basis.

> As the foregoing indicates, the ALJ linked his credibility determination to the evidence as required by *Kepler* [*v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)], and he provided specific reasons for the determination in accordance with *Hardman* [*v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004)]. There is no indication that the ALJ misread the medical evidence as a whole, so his determination as to the claimant's credibility is entitled to deference. *See Casias*, 933 F.2d at 801.

*Id.* at 10.

The order of the district court is AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

-8-