**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MARISSA C. PEREZ-LEEDS,

      Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant - Appellee.

No. 14-2069
(D.C. No. 1:13-CV-00185-KBM)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **McKAY**, and **McHUGH**, Circuit Judges.

---

      Marissa C. Perez-Leeds appeals from an order of the district court affirming

the Commissioner's decision denying her application for disability benefits.  We

have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), and we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

On April 27, 2011, Ms. Perez-Leeds filed an application for a period of disability, disability-insurance benefits, and supplemental-security-income benefits. She alleged disability beginning on October 26, 2010, when she was 34 years old. The agency denied her application initially and on reconsideration. Ms. Perez-Leeds then received a de novo hearing before an administrative law judge (ALJ).

The ALJ's decision followed the required five-step sequential evaluation process to determine whether Ms. Perez-Leeds was disabled, *see Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). At step one the ALJ found that Ms. Perez-Leeds had not engaged in substantial gainful activity since the alleged onset date of her disability. At step two he found that she had the following severe impairments: obesity, affective disorder, borderline intellectual functioning, and anxiety. And at step three he found that Ms. Perez-Leeds did not have an impairment or combination of impairments that met or equaled a listed impairment.

The ALJ then assessed Ms. Perez-Leeds's residual functional capacity (RFC), concluding that she could perform a full range of work at all exertional levels, but with some nonexertional limitations. Specifically, the ALJ said that she "can perform simple tasks, working primarily with things, rather tha[n] with people. She can maintain concentration, pace, and persistence on such tasks for two hour periods at a time before taking a regularly scheduled break and returning to work for another two hour period, throughout the work day." Admin. R. at 15.

At step four the ALJ determined that Ms. Perez-Leeds could not perform her past relevant work as a clerk or cashier, but he found at step five that jobs she could perform existed in significant numbers in the national economy. He therefore concluded that Ms. Perez-Leeds was not disabled. After the Appeals Council denied review of the ALJ's decision, Ms. Perez-Leeds appealed to the district court, which upheld the ALJ's decision.

II.

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (citation and internal quotation marks omitted). Our job is not to "reweigh the evidence or substitute our judgment for the Commissioner's." *Id.* (internal quotation marks omitted). On appeal Ms. Perez-Leeds argues that the ALJ's step-three finding is unsupported by substantial evidence. She also asserts that the ALJ failed to properly consider the medical evidence of record when he made his RFC assessment.

A. Step Three Determination

"At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges

as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (internal quotation marks omitted). Ms. Perez-Leeds bears the burden of establishing that her impairments meet or equal a listed impairment. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). She contends that the record contains evidence showing that she meets the criteria of Listing 12.04 (affective disorders) and Listing 12.06 (anxiety-related disorders).

The ALJ determined that Ms. Perez-Leeds did not meet either of those listings because she did not satisfy the "B" criteria. To satisfy the "B" criteria, the impairment must result in at least two of the following: "Marked restriction of activities of daily living"; "Marked difficulties in maintaining social functioning"; "Marked difficulties in maintaining concentration, persistence, or pace"; and "Repeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04B.1-4; 12.06B.1-4.

The ALJ concluded that Ms. Perez-Leeds had only moderate restrictions or difficulties in the three relevant areas and no episodes of decompensation. On appeal Ms. Perez-Leeds contends that the ALJ erred in this conclusion because the evidence shows she had more than moderate limitations in the three functional areas. We address each area in turn.

### 1. *Social Functioning*

Citing to our decision in *Clifton*, Ms. Perez-Leeds asserts that the ALJ erred in finding that she has only moderate limitations in social functioning because he gave

no reason to support his finding. In *Clifton* we noted that the ALJ did not identify the relevant listings, discuss the evidence, or give any reasons for determining that the claimant was not disabled at step three. *See* 79 F.3d at 1009. Instead, the ALJ merely stated a summary conclusion that the claimant's impairments did not meet or equal a listing. *See id.* We ruled that "[s]uch a bare conclusion is beyond meaningful review." *Id.*

In contrast, the ALJ here identified the relevant listings, discussed the evidence as it pertained to the relevant criteria in the listings, and concluded that Ms. Perez-Leeds did not meet the listings because she did not show marked limitations in any of the functional areas identified in paragraph B of the listings. While it is true that the ALJ did not discuss specific evidence with respect to his conclusion that Ms. Perez-Leeds had only moderate limitations in social functioning, "an ALJ is not required to discuss every piece of evidence," *Clifton*, 79 F.3d at 1009-10. Significantly, Ms. Perez-Leeds does not cite to any evidence related to her social functioning that the ALJ failed to discuss and that would demonstrate she has a marked limitation in this functional area. And the record includes substantial evidence supporting the ALJ's conclusion that Ms. Perez-Leeds has moderate limitations in social functioning. None of the doctors who evaluated Ms. Perez-Leeds found that she had marked limitations in social functioning. Dr. Janeanne Snow observed that Ms. Perez-Leeds was a "cooperative, pleasant young woman" and "[h]er demeanor can certainly be seen as an asset." Admin. R.

at 347.  Dr. Joseph Sadek noted that Ms. Perez-Leeds was "alert, pleasant, and cooperative"; was "appropriately and casually dressed"; and during the two days of testing "presented as socially appropriate but reserved." *Id.* at 351.  And Dr. Mark Simpson concluded that Ms. Perez-Leeds had mild or no limitations in all three areas of social functioning he evaluated. *See id.* at 319.  Consistent with these first-hand assessments, the consultative examiner who reviewed the record concluded that Ms. Perez-Leeds was not significantly limited in the area of social functioning, *see id.* at 108-09, and "could relate adequately to supervisors and co-workers," *id.* at 109.

Thus, as in *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000), Ms. Perez-Leeds "has not directed our attention to any medical evidence that was disregarded." And, as in *Barnett*, our review of the record supports the conclusion that the ALJ reasonably considered the evidence. *See id.*  Under these circumstances we can adequately review the ALJ's findings.  Ms. Perez-Leeds has not shown that the ALJ committed reversible error in determining that she has only moderate limitations in social functioning.

### 2. *Activities of Daily Living*

Ms. Perez-Leeds contends that the ALJ's finding that she has only moderate restrictions in activities of daily living is not supported by the record and is premised on incorrect legal standards.  She states that "[t]he ALJ cited [her] ability to drive her children to school, shop, cook, and perform household chores as the sole reason for finding that [she] was only moderately limited in this domain." Aplt. Br. at 10.  She

- 6 -

then asserts that "the record shows that [her] ability to perform those tasks was not *unlimited* as the ALJ suggests," and goes on to recite evidence indicating that she had difficulties with household chores, cooking, shopping, and organizing her home and budget. *Id*. (emphasis added). The ALJ, however, did not suggest that Ms. Perez-Leeds's ability to perform activities of daily living was "unlimited." Contrary to Ms. Perez-Leeds's argument that the ALJ mischaracterized the extent of her daily activities, the ALJ specifically noted that she "experiences difficulties while performing daily activities." Admin. R. at 14. The ALJ's conclusion that she has moderate restrictions in activities of daily living reflects his consideration of her stated difficulties with some of these activities.

Ms. Perez-Leeds also contends that the ALJ "ignored the report from Dr. Joseph Sadek which summarized [her] performance on a battery of psychological tests." Aplt. Br. at 11. But the ALJ did not ignore Dr. Sadek's report. The ALJ discussed the report as part of the evidence in support of his RFC determination, and concluded that Dr. Sadek's opinion deserved less weight because it overstated her limitations as compared to her demonstrated ability to perform activities of daily living, including driving her children to and from school and being able to use a computer to access the internet and exchange e-mail.

Ms. Perez-Leeds next argues that "[r]esults from testing and clinical interview performed by Dr. Simpson also indicated marked limitations in [her] ability to perform activities of daily living." Aplt. Br. at 11-12. But in Dr. Simpson's "Mental

- 7 -

Status Consultative Examination," he did not specifically assess Ms. Perez-Leeds's ability to perform activities of daily living or reach a conclusion on that issue. *See* Admin. R. at 314-19.

Ms. Perez-Leeds further asserts that "Dr. Simpson noted that [she] had cognitive impairments that caused difficulty multitasking and preparing and completing tasks in the home environment." Aplt. Br. at 12. This assertion gives the impression that Dr. Simpson reached this conclusion based on his own independent evaluation; but that is not an accurate characterization of the record. Dr. Simpson's summary of Ms. Perez-Leeds's recitation of her history states that she reported "having cognitive delays that included processing information, and having difficulty multitasking." Admin. R. at 314. Ms. Perez-Leeds also told him that "[b]oth at home and in the work environment it takes her a long time to prepare and complete tasks." *Id.* at 314-15. These statements reflect Ms. Perez-Leeds's assessment of her abilities, not Dr. Simpson's assessment.[1] The ALJ did not err in evaluating the medical evidence or in concluding that Ms. Perez-Leeds has only moderate restrictions in activities of daily living.

---

[1] The ALJ found Ms. Perez-Leeds's statements concerning the limiting effects of her symptoms credible to the extent they were consistent with his RFC assessment. His RFC found her capable of performing a full range of work at all exertional levels, subject to certain nonexertional limitations. Ms. Perez-Leeds has not challenged the ALJ's assessment of her credibility.

### 3. *Concentration, Persistence, or Pace*

Ms. Perez-Leeds argues that the ALJ's conclusion that she has moderate difficulties in concentration, persistence, or pace is not supported. In reaching this conclusion, the ALJ noted Dr. Sadek's assessment that she "demonstrates functional restriction because of pervasive developmental disorder NOS, especially in the area of maintaining attention." Admin. R. at 15. But the ALJ also noted Ms. Perez-Leeds's testimony that she could use a computer to access the internet and carry on correspondence via email; read magazines; and seek and receive unemployment benefits. The ALJ properly acknowledged Dr. Sadek's opinion, but reasonably concluded that Ms. Perez-Leeds had demonstrated only moderate difficulties in this functional area.

Ms. Perez-Leeds contends that "other evidence not mentioned by the ALJ indicates that [she] had marked limitations in concentration, persistence, or pace." Aplt. Br. at 12. She refers to her receiving "assistance and accommodation from her mother in her past work"; her former employer's ordering a psychological evaluation from Dr. Snow; and Dr. Sadek's opinion that she "could not organize a job search on her own or attain employment without the assistance of others" and "that she required at least twice as much time as her peers to complete tasks." *Id*. at 13. But the ALJ did refer to this evidence in the decision. For example, the ALJ recognized Ms. Perez-Leeds's testimony that "she receives help from her mother on a relatively frequent and consistent basis." Admin. R. at 16. The ALJ also noted that "Dr. Snow

- 9 -

examined the claimant, and reported that her employer was concerned about her job performance involving clerical duties in his law office." *Id*. at 17. Finally, the ALJ discussed Dr. Sadek's report but concluded that his opinion "apparently overstates the claimant's limitations" and is inconsistent with Ms. Perez-Leeds's own testimony. *Id*.

Ms. Perez-Leeds ends this section with the conclusory assertion that the evidence noted above "indicate[s] a marked rather than moderate limitation in concentration, persistence, and pace." Aplt. Br. at 13. Our role, however, is not to reweigh the evidence, *see Lax*, 489 F.3d at 1084, and Ms. Perez-Leeds has not shown that the ALJ committed reversible error in finding that she had only a moderate limitation in this functional area.

In sum, substantial evidence supports the ALJ's conclusion that Ms. Perez-Leeds did not demonstrate that she satisfied the listing requirement of having marked limitations in two of the three identified functional areas. The ALJ properly found Ms. Perez-Leeds not disabled at step three.

B. RFC Assessment

Ms. Perez-Leeds challenges the ALJ's RFC assessment, claiming that he failed to properly consider the medical evidence of record. She first asserts that the ALJ should not have given "significant weight" to Dr. Snow's opinion because it was completed in 1998, twelve years before she claimed she became disabled. Aplt. Br. at 15. But the ALJ expressly considered the timing of the evaluation, and noted that

he would have given it "even more weight" had it been more recent.  Admin. R. at 17.  The ALJ went on to explain that Dr. Snow's "opinion is significant because it is consistent with the claimant's actual work history, which is precisely what Dr. Snow predicted would occur if skills, opportunity, and motivation were properly aligned."  *Id*.  Dr. Snow predicted that Ms. Perez-Leeds "will do as well at her work and in her personal/social life as her support structure allows."  *Id*. at 348.  In the years following Dr. Snow's evaluation, Ms. Perez-Leeds was able to maintain jobs at Walgreens (from 1998 to 1999) and the Albuquerque BioPark (from 2003 to 2009).[2] Dr. Snow's opinion is therefore consistent with Ms. Perez-Leeds's subsequent work history.  "Generally, the more consistent an opinion is with the record as a whole, the more weight [the agency] will give to that opinion."  20 C.F.R. § 404.1527(c)(4); *id*. § 416.927(c)(4).  We see no reversible error in the weight the ALJ gave to Dr. Snow's opinion.

Ms. Perez-Leeds also complains that the ALJ erred in evaluating Dr. Snow's opinion by selectively relying on parts of the opinion and ignoring other parts.  She reiterates her claim that he failed to mention that her employer at the time requested the evaluation from Dr. Snow, and she references statements by Dr. Snow that her ability to relate her own history was compromised and that she was not able to think of the right words to relay her thoughts.  But, as noted above, the ALJ did mention

---

[2]     Ms. Perez-Leeds left her position at Walgreens to start a family.  She was in a two-year contract at the end of her time at BioPark and the contract was not renewed.

that Dr. Snow "reported that [Ms. Perez-Leeds's] employer was concerned about her job performance involving clerical duties." Admin. R. at 17. And although not specifically mentioning Ms. Perez-Leeds's difficulty in expressing herself, the ALJ recognized the more general point that Ms. Perez-Leeds "demonstrates some degree of functional limitation in the context of developmental deficiency" and "does have certain limitations, such as difficulty in multitasking, as well as memory problems and problems associated with domestic management." Admin. R. at 17. The ALJ determined, however, that these limitations "do not preclude all work activity," *id*., and assessed Ms. Perez-Leeds's RFC with these limitations in mind, noting that she "can perform simple tasks" and "can maintain concentration, pace, and persistence on such tasks for two hour periods at a time before taking a regularly scheduled break." *Id*. at 15. The ALJ's RFC assessment is therefore consistent with Dr. Snow's report and does not impermissibly ignore contradictory evidence.

Ms. Perez-Leeds next contends that the ALJ failed to give proper weight to Dr. Sadek's opinion that she required substantial assistance with her activities of daily living and would be unable to organize a job search on her own or attain employment without the assistance of others. The ALJ discounted this opinion, concluding that it overstated Ms. Perez-Leeds's limitations as described in her own testimony about her daily activities and abilities. The ALJ explained that Ms. Perez-Leeds's "ability to drive her children to and from school, and other locations, demonstrates her ability to physically operate a vehicle, and her mental

capacity to understand and comply with applicable traffic regulations, and to remember the directions to and from her desired locations." Admin. R. at 17. He further noted that "her ability to use the computer demonstrates an ability to perform the mental capacity to remember and execute steps required to use the internet for activities such as exchanging E-mail." *Id.* Ms. Perez-Leeds has not identified any reversible error in the ALJ's consideration of Dr. Sadek's opinion in making his RFC finding. It was proper for the ALJ to consider whether the limitations proposed in Dr. Sadek's opinion were consistent with Ms. Perez-Leeds's own testimony about her abilities. *See* 20 C.F.R. § 404.1527(c)(4); *id.* § 416.927(c)(4).

Finally, Ms. Perez-Leeds contends that the ALJ erred in his consideration of Dr. Simpson's opinion. The ALJ stated:

> I give [Dr. Simpson's] opinion significant weight, as it recognizes the claimant's abilities and her limitations, although it also does not account for some of her demonstrated abilities in excess of those reported, such as her ability to drive her children back and forth to school, use the computer, and to read and understand magazines that interest her.

Admin. R. at 18. Ms. Perez-Leeds asserts that Dr. Simpson did account for her ability to engage in those activities of daily living but still concluded she would not be likely to maintain employment. Yet other than reporting that Ms. Perez-Leeds has two children and is able to drive, *see* Admin. R. at 314, Dr. Simpson's report does not discuss the extent of her daily activities, *see id.* at 314-19. The ALJ therefore reasonably concluded that the opinion did not account for all of Ms. Perez-Leeds's

- 13 -

demonstrated abilities in her activities of daily living.  We see no reversible error in the ALJ's consideration of Dr. Simpson's opinion.

## III.

The judgment of the district court is affirmed.

Entered for the Court


Harris L Hartz
Circuit Judge