FILED
United States Court of Appeals
Tenth Circuit

June 29, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

LINDA J. DANIELL,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration,

        Defendant-Appellee.

No. 09-2310
(D.C. No. 1:08-CV-01088-CG)
(D. N.M.)

ORDER AND JUDGMENT*

Before **BRISCOE**, Chief Judge, **TYMKOVICH**, and **GORSUCH**,
Circuit Judges.

Linda J. Daniell appeals from an order of the district court affirming the

Commissioner's decision denying her application for Social Security benefits.

This case involves a small administrative record with a limited amount of medical

evidence. Ms. Daniell submitted records from her two treating physicians,

---

\*     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Dr. Julian Venegas and Dr. Michael Murphy. The remaining records are limited to consultative examinations and an assessment form that was prepared by a non-examining agency physician after he reviewed the records from one of the consultative examinations. After reviewing the records and holding a hearing, the Administrative Law Judge (ALJ) determined that Ms. Daniell had the residual functional capacity (RFC) to return to her past work as a secretary.

Ms. Daniell asserts that the ALJ's RFC determination was flawed because the ALJ did not properly consider the opinions of her treating physicians. We agree.

The ALJ's RFC determination appears to be based on the opinion of the agency's non-examining medical consultant and conflicts with the opinions of Ms. Daniell's treating physicians. When an ALJ considers medical opinions, the opinion of a non-examining physician is generally entitled to the least weight of all and the opinion of a treating physician is generally entitled to the most weight. The ALJ did not follow the sequential analysis for considering treating physician opinions, did not seek to develop the record further before rejecting those opinions, and did not offer any legally sufficient justification for favoring the opinion of the non-examining agency physician over the opinions of the treating physicians. Because of these legal errors, we must reverse and remand for further proceedings.

## I.  Background

Ms. Daniell filed an application for disability insurance benefits on December 1, 2004, alleging that she became disabled on October 11, 2004, due to an injury to her left ankle.  Because Ms. Daniell had not received treatment for her ankle injury since 2000, Ms. Daniell was examined by a consultative examiner, Dr. John C. Lund, in January 2005.  Dr. Lund confirmed that she had suffered an injury to her left ankle.  He noted that her ankle was swollen and painful to the touch and her range of motion in that ankle was limited to about five degrees of flexion and extension, but he did not provide an assessment of her functional capacity.  In February 2005, Dr. Edward Bocian, a state agency medical consultant, reviewed Ms. Daniell's medical records and completed a form entitled "Physical Residual Functional Capacity Assessment."  Admin. R. at 93.

Next, from March to October 2005, Dr. Venegas treated Ms. Daniell for ankle osteoarthritis with pain.  He prescribed anti-inflammatory medication and pain medication.  In September 2005, Dr. Venegas completed two forms that reflected his assessment of Ms. Daniell's physical and non-exertional limitations due to her ankle impairment.  In October and November 2005, Dr. Venegas attempted to alleviate Ms. Daniell's ankle pain by administering steroid injections but he observed no significant improvement in Ms. Daniell's condition after the injections.

In March 2006, Dr. Murphy began treating Ms. Daniell. She saw him twice in March and once for a follow-up in August. She also went to see Dr. Mark Seibel in August 2006. He recommended surgery based on his opinion that she had optimized all of her other treatment options. Ms. Daniell told Dr. Seibel that she was concerned about not having health insurance and therefore she wanted to wait until her disability and insurance issues were resolved before proceeding with surgery. In May 2007, Ms. Daniell went back to Dr. Murphy complaining again of ankle pain. At that visit, she also had him complete two forms where he assessed her physical and non-exertional limitations.

The agency denied Ms. Daniell's application for benefits initially and on reconsideration. At her request, Ms. Daniell received a de novo hearing before an ALJ. After the hearing, the ALJ determined that Ms. Daniell suffered from the following severe impairment: status-post left ankle fracture, with severe degenerative posttraumatic arthrosis. The ALJ concluded, however, that Ms. Daniell did not have any impairment or combination of impairments that equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 and that she had the residual functional capacity to perform her past relevant work as a secretary. As a result, the ALJ denied Ms. Daniell's application for benefits, concluding that she was not disabled at step four of the analysis. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (explaining five-step process for evaluating claims for disability benefits).

The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. Ms. Daniell appealed the ALJ's decision to the district court and that court affirmed the ALJ's decision. This appeal followed.

## II. Discussion

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). On appeal, Ms. Daniell argues that the ALJ erred in assessing her residual functional capacity (RFC), in finding that she could return to her past relevant work as a secretary, and in assessing her pain and credibility.

We agree that the ALJ erred in assessing Ms. Daniell's RFC because she did not properly consider the opinions of Ms. Daniell's treating physicians. First, the ALJ did not follow the sequential analysis for considering treating physician opinions as outlined in *Watkins v. Barnhart*, 350 F.3d 1297 (10th Cir. 2003). Second, the ALJ failed to seek further development of the record before rejecting the opinions of the treating physicians. Third, the ALJ improperly favored the opinion of the non-examining medical consultant over the opinions of Ms. Daniell's two treating physicians.

The ALJ made the following RFC determination:

[T]he claimant can lift and carry up to ten pounds, can sit for a total of no more than six hours, can stand and walk for a total of no more than two hours and continuously for 15 minutes, can push and pull

-5-

with the upper extremities in a manner consistent with the strength limitations just stated and with the lower extremities except just with her right foot. She should never climb ropes, ladders or scaffolds, but can occasionally climb ramps and stairs, and balance, stoop, kneel, crouch, and crawl occasionally. She must avoid concentrated exposure to unprotected heights and hazardous moving machinery.

Admin. R. at 17. As Ms. Daniell explains, the ALJ's RFC determination conflicts with the opinions of her treating physicians, Dr. Venegas and Dr. Murphy. Both of these doctors limited Ms. Daniell's lifting to less than five pounds and limited her standing/walking to less than two hours in an eight-hour workday. Dr. Murphy further limited Ms. Daniell to no kneeling, stooping, crawling, or crouching. The ALJ's RFC determination tracks the RFC assessment provided by the non-examining medical consultant.

Social Security Ruling 96-8p, which provides guidance for "Assessing Residual Functional Capacity in Initial Claims," explains:

Medical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to special significance and may be entitled to controlling weight. If a treating source's medical opinion on an issue of the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the adjudicator must give it controlling weight.

Social Security Ruling 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Ms. Daniell contends that "the ALJ failed to show that the medical assessments by either Dr. Venegas or Dr. Murphy were inconsistent with 'other substantial evidence.' As such, the opinions were entitled to controlling weight and their respective

functional restrictions should have been included in the ALJ's assessment of Ms. Daniell's RFC." Aplt. Br. at 25.

As we explained in *Watkins*, when considering a treating source opinion, an ALJ must first determine if the opinion is entitled to controlling weight. 350 F.3d at 1300. In making this determination, an ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether the opinion is consistent with other substantial evidence in the record. *See id.* "A finding at this stage (as to whether the opinion is either unsupported or inconsistent with other substantial evidence) is necessary so that we can properly review the ALJ's determination on appeal." *Id.* at 1300. If the ALJ determines that the opinion is deficient in both of these respects, then it is not entitled to controlling weight. *See id.* The ALJ's next step is to determine what weight, if any, the opinion deserves, considering certain factors identified in the regulations. *See id.* at 1300-01. Treating physician opinions are still entitled to deference and the ALJ must give good reasons in his or her decision for the weight he ultimately assigns those opinions. *Id.*

In considering the opinions of Ms. Daniell's treating physicians, the ALJ first noted that Dr. Venegas had opined that Ms. Daniell was able to sit for at least six hours out of an eight-hour work day, which supported sedentary work. The ALJ presumably agreed with this portion of Dr. Venegas's opinion. But the ALJ went on to reject Dr. Venegas's opinion that Ms. Daniell could lift no more

than five pounds, explaining "[t]hat physician gave no particular reason why the claimant's ankle condition should prevent lifting of more than five pounds, or why the claimant would not be able to lift up to ten pounds; and his opinion was given by means of checked boxes, without any explanation." Admin. R. at 20-21. The ALJ further rejected Dr. Venegas's opinion that Ms. Daniell "would have severe problems working a full work day or work week because of her ankle pain" because that part of the opinion "appears to have been based on [Ms. Daniell's] reports of symptoms to [Dr. Venegas], which are not fully credible." *Id*. at 21. Finally, the ALJ implicitly rejected the portion of Dr. Venegas's opinion that Ms. Daniell should be restricted to standing or walking *less* than two hours in an eight-hour workday because the ALJ's RFC assessment provided that Ms. Daniell could stand and/or walk *up* to two hours per day.

The ALJ next considered Dr. Murphy's opinion, noting that Dr. Murphy had also given his opinion "by filling in a form with checked boxes" and that he had checked the boxes indicating that Ms. Daniell was unable to stand or walk even two hours out of an eight-hour workday, she could not sit for even four hours during the workday, and she could not lift even five pounds. *Id*. The ALJ further noted that "[l]ike Dr. Venegas, [Dr. Murphy] provided no specific reason for such severe work restrictions based on [Ms. Daniell's] ankle condition." *Id*. The ALJ also rejected Dr. Murphy's opinion that Ms. Daniell could do no

kneeling, stopping, crouching, or crawling. The ALJ ultimately concluded that Dr. Murphy's opinion was entitled to "little weight." *Id.*

The ALJ's consideration of the opinions of Dr. Venegas and Dr. Murphy is deficient in several respects. First, the ALJ failed to follow the sequential analysis we outlined in *Watkins*. *See* 350 F.3d at 1300-01. In the decision, the ALJ did not give controlling weight to the opinion of Dr. Venegas or Dr. Murphy and failed to provide sufficient reasons for this conclusion, and then failed to explain what weight, if any, she was giving Dr. Venegas's opinion.[1] *See id.* Instead, her rejection of the treating physician opinions appears based on her own speculation. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his own or her own credibility judgments, speculation or lay opinion." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004). The ALJ did not identify any contradictory or substantial medical evidence that outweighed the treating physician opinions.

---

[1] The ALJ appeared to give Dr. Venegas's opinion some weight by relying on it for the portion of the RFC that Ms. Daniell could sit for six hours a day and in discounting Dr. Murphy's opinion that Ms. Daniell could only sit for four hours a day. But "[t]he ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).

Second, the ALJ's statement that Dr. Venegas and Dr. Murphy did not give reasons for such severe functional limitations triggered the ALJ's duty to seek further development of the record before rejecting their opinions. The medical evidence in this case is limited. When both treating physicians adopt similar functional limitations, the ALJ should not reject those limitations out of hand. Rather, the ALJ should give the treating physicians an opportunity to provide the reasons for the limitations they assessed.

In *Robinson*, we remanded the case under virtually identical circumstances when the ALJ in that case stated that the treating physician's records did not give a reason for his opinion that the claimant in that case was unable to work. *See Robinson*, 366 F.3d at 1084. "If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician to determine if additional needed information is readily available." *Id*. (citing 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.")). It is the ALJ's responsibility to seek additional evidence from a treating physician under these circumstances. *See Robinson*, 366 F.3d at 1084.

Finally, the ALJ improperly discounted the opinions of the treating physicians as to Ms. Daniell's exertional and non-exertional limitations in favor of the opinion of the medical consultant who did not examine Ms. Daniell. Before discussing the treating physician opinions, the ALJ explained that her RFC determination was "consistent with the opinions of the consultative examiner and the medical consultant." Admin. R. at 20. In making the RFC assessment, the ALJ adopted the medical consultant's opinion that Ms. Daniell could lift up to ten pounds, could stand/walk for two hours, and could occasionally stoop, kneel, crawl, and crouch, although those opinions were inconsistent with the opinions of the treating physicians.

"When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (internal quotation marks and brackets omitted). The ALJ did not explain why the opinion of the consultative examiner and the non-examining medical consultant should be given more weight than the opinions of Dr. Venegas and Dr. Murphy. The ALJ was critical of the treating physicians for checking boxes on forms without providing specific reasons for why Ms. Daniell's condition would limit her functional abilities in certain areas, but the medical consultant provided his assessment in the same format. *Compare* Admin. R. at 94-95 with *id*. at 103, 167. Although the medical

-11-

consultant provided some narrative on his form, *see id.* at 94-95, he, like the treating physicians, did not give specific reasons for the functional limitations he assessed. Moreover, the medical consultant's opinion was based solely on a review of the medical records from Ms. Daniell's consultative examination in January 2005, and did not include a review of any of the medical records or assessments provided by Dr. Venegas or Dr. Murphy.

In general, treating source opinions should be given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. *See Robinson*, 366 F.3d at 1084. As we explained in *Robinson*,

> The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and *the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all*.

*Id.* (quotations and citations omitted, emphasis added). As in *Robinson*, the ALJ in this case erred in rejecting the opinions of Ms. Daniell's treating physicians in favor of the opinion of the non-examining medical consultant without providing a legally sufficient explanation for doing so.[2] *See id.*

---

[2] Although the ALJ stated that Ms. Daniell's RFC assessment was consistent with that of the consultative examiner, that doctor did not provide any assessment

(continued...)

We note that in its response brief on appeal, the government attempts to provide justification for the ALJ's RFC determination by arguing that the treating physician opinions were entitled to less weight because they conflicted with Ms. Daniell's own admissions that she could lift up to ten pounds and stand for two to three hours. *See* Aplee. Br. at 29, 31. These alleged admissions are part of a medical record from a consultative doctor's examination that took place in June 2008—four months after the ALJ's decision.[3] Although this new evidence is now part of the record because Ms. Daniell submitted it to the appeals council, *see O'Dell v. Shalala*, 44 F.3d 855, 858-59 (10th Cir. 1994), this new evidence cannot be used to support the ALJ's decision when it was not before the ALJ. *See Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."). This new evidence was considered by the appeals council when it was reviewing the ALJ's decision but the appeals council did not discuss or rely on these alleged admissions. The appeals council ultimately concluded that the new evidence did "not provide any new clinical or

[2](...continued)
of Ms. Daniell's functional capabilities. Accordingly, it appears as though the ALJ relied exclusively on the medical consultant's RFC assessment in making the ultimate RFC determination. *Compare* Admin. R. at 17 with *id*. at 94-97.

[3] The alleged admissions are contained in the section of the medical record titled "HISTORY OF FUNCTIONAL STATUS (as reported by claimant)," which states that Ms. Daniell "can stand for 15 minutes at a time and a total of two to three hours in an 8 hour period," and "can lift 10 pounds." Admin. R. at 185.

laboratory findings which would warrant a change in the [ALJ's] decision."

*See id.* Because neither the ALJ nor the appeals council expressly relied on Ms. Daniell's alleged admissions or the rationale articulated by the government, we cannot use this new evidence as a basis to affirm the ALJ's decision. *See Haga*, 482 F.3d at 1207-08; *see also Robinson*, 366 F.3d at 1084-85 (rejecting district court's attempt to supply possible reasons for giving less weight to or rejecting the treating physician's opinion, noting that "[t]he ALJ's decision should have been evaluated based solely on the reasons stated in the decision"). On remand, the evidence may properly be considered.

We conclude that the ALJ did not follow the correct legal standards in considering the opinions of Ms. Daniell's treating physicians and therefore the ALJ erred in assessing Ms. Daniell's RFC. We will not reach the remaining issues raised by Ms. Daniell because they may be affected by the ALJ's resolution of this case on remand. We REVERSE the district court's decision and REMAND the case to the district court with instructions to remand the case to the Commissioner for further proceedings in accordance with this decision.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

-14-