FILED
United States Court of Appeals
Tenth Circuit

February 7, 2012

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

WILLIAM O. MAYBERRY,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration,

Defendant-Appellee.

No. 11-5058
(D.C. No. 4:09-CV-00533-TLW)
(N.D. Okla.)

_____

ORDER AND JUDGMENT[*]

_____

Before **TYMKOVICH**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**EBEL**, Circuit Judge.

_____

William O. Mayberry appeals from the order entered by the district court

affirming the Social Security Commissioner's decision denying his applications

for disability insurance benefits and supplement security income benefits under

the Social Security Act. Exercising jurisdiction under 42 U.S.C. § 405(g) and

28 U.S.C. § 1291, we affirm.

_____

[*]      After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**I.**

Plaintiff applied for social security benefits based on various physical and mental infirmities. His applications were denied initially and on reconsideration, and a de novo hearing was held before an administrative law judge (ALJ).

The ALJ also denied plaintiff's applications at step five of the five-step sequential evaluation process for determining disability. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing five steps). Specifically, the ALJ found that: (1) plaintiff has not engaged in substantial gainful activity since February 21, 2002; (2) plaintiff suffers from the severe medical impairments of obesity, diabetes mellitus, depression, and a pain disorder; (3) plaintiff's impairments do not meet or equal any listed impairment under the controlling regulations; (4) plaintiff has the residual functional capacity to perform sedentary work, but he cannot perform more than "simple, repetitive tasks," Aplt. App., Vol. 2 at 18; (5) plaintiff is not able to perform his past relevant work as a groundskeeper since he performed that work at the medium level of exertion; but (6) considering plaintiff's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that plaintiff can perform such as bench assembler, machine operator, and order clerk.

The Appeals Council denied plaintiff's request for review of the ALJ's decision. He then filed a complaint in the district court. A magistrate judge affirmed, and this appeal followed.

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). In reviewing the ALJ's decision, "we neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, we review the ALJ's decision only "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal*, 331 F.3d at 760. Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). It "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted).

**II.**

Plaintiff claims that: (1) the ALJ failed to perform a proper evaluation of the opinions of his treating physician, Dr. LaFromboise; (2) the ALJ's finding that plaintiff's statements about his impairments were not entirely credible is not

supported by substantial evidence; and (3) the ALJ's determination of plaintiff's residual functional capacity is flawed because it did not include all of his relevant impairments.

Before addressing these issues, we note that plaintiff's medical history is summarized in detail in the ALJ's decision and the parties' briefs on appeal, and we will not repeat that history here. In addition, because we are convinced that the ALJ's denial of social security benefits is supported by substantial evidence in the administrative record and free of any legal error, we do not deem it necessary to separately address each of the multiple sub-arguments that plaintiff has advanced in support of his three general propositions of error. Instead, we will limit our analysis to the points discussed below.

**A. Treating Physician**

Plaintiff first contends the ALJ erred by giving only "limited weight" to Dr. LaFromboise's opinions. *See* Aplt. App., Vol. 2 at 24. Over two years after plaintiff filed his social security applications, Dr. LaFromboise treated him for depression, back pain, hypertension, and other ailments. *Id.* at 193-200. Dr. LaFromboise's opinions are set forth in a letter dated March 27, 2008, in which she stated the following:

> Since 01/17/08, William Mayberry has received outpatient services at Associated Centers for Therapy (ACT).

> As the primary provider, it is my professional opinion that William is unable to perform the duties required of a job due to a combination of mental and physical health issues. . . .
>
> William is easily confused and has poor ability to concentrate on conversation of any depth. His current state is of permanent disability.

*Id.* at 202.

Under the controlling regulations, the final responsibility for deciding the ultimate issue of whether a social security claimant is "disabled" or "unable to work" is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1) (internal quotation marks omitted). Consequently, an ALJ is not bound by a treating physician's opinion on the ultimate issue of disability, *id.*, and such an opinion is never entitled to controlling weight or special significance, *see* Soc. Sec. Ruling (SSR) 96-5p, 1996 WL 374183, at *1, *2, *5 (July 2, 1996).

> However, opinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

*Id.* at *3; *see also id.* at *1 (stating that a social security decision "must explain the consideration given to a treating source's opinion(s)" on an issue reserved to the Commissioner).

-5-

Given this framework, Dr. LaFromboise's opinions that plaintiff is "unable to perform the duties required of a job" and is "permanent[ly] disabled" are "not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner." 20 C.F.R. §§ 404.1527(e) and 417.927(e). While a physician's opinions on issues reserved to the Commissioner are not entitled to controlling weight or any special significance, the ALJ was still required to provide an evaluation of the opinions and explain his reasons for either rejecting or accepting them.

We conclude that the ALJ sufficiently explained his decision to give "little weight" to Dr. LaFromboise's opinions. First, the ALJ correctly noted that "it is not clear that the doctor was familiar with the definition of 'disability' contained in the Social Security Act and regulations." Aplt. App., Vol. 2 at 24. Second, the ALJ stated that "[t]he course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly disabled, as the doctor has reported."[1] *Id.* Although the latter statement borders on improper

---

[1]    We note that the ALJ also gave two additional reasons for discounting Dr. LaFromboise's opinions. First, the ALJ stated that Dr. LaFromboise "apparently relied quite heavily on the subjective reports of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." Aplt. App., Vol. 2 at 24. Second, the ALJ pointed out that, "[w]hile [Dr. LaFromboise] does have a treating relationship with the claimant, the treatment history is quite brief, when considering the claimant's alleged onset date of February 2, 2002." *Id.* These are insufficient reasons for discounting Dr. LaFromboise's opinions. The first reason

(continued...)

-6-

boilerplate language, we believe it is better construed as properly relying on

inconsistencies between Dr. LaFromboise's opinions and her treatment records.

In his decision, the ALJ accurately summarized the treatment that

Dr. LaFromboise provided to plaintiff as follows:

> Treatment records from Associated Centers for Therapy cover the period from January 17, 2008 through June 26, 2008. Initial evaluation showed an assessment of rule out post traumatic stress disorder, which could be a mood disorder secondary to multiple health problems, rule out diabetes, possible sleep apnea, hypertension, lower back pain and rectal bleeding. The claimant was prescribed Rozerem, Provigil, Flexeril and Lisinopril, as well as laboratory blood tests. The claimant was followed by Dawn LaFromboise, M.D. for his mental health needs. The claimant reported that he was still having problems with the medications not getting him to sleep and the depression medication made him jittery during the day. The claimant reported the Flexeril worked to help relieve back pain but tended to make him a little sleepy during the day. The claimant continued to complain of depression despite taking the Provigil. [Dr. LaFromboise therefore discontinued the Provigil and instead prescribed Amitriptyline, an anti-depressant.] The claimant's affect was irritable and mood was described as "depressed." Insight was fair and behavior was appropriate. The diagnostic assessment was mood disorder secondary to multiple health problems, rule out post traumatic stress disorder, and major depressive disorder. On April 30, 2008 the claimant reported for his monthly appointment and reported his blood pressure medication working and the Amitriptyline helped him to sleep. He also reported the depression was getting better. The claimant's mood was congruent and affect was stressed due to family problems on May 29, 2008. The assessment was major depressive disorder, recurrent and

---

[1](...continued)
is conclusory and relies on improper boilerplate language, while the second reason ignores the fact that Dr. LaFromboise saw plaintiff seven times over the course of a six-month period and prepared detailed treatment records concerning each visit.

possible post traumatic stress disorder. He was to continue taking the medications of Flexeril 10mg, Lisinopril 20 mg, and Amitriptyline raised to 100mg. He was scheduled to return in one month. On June 26, 200[8] the claimant's behavior was more sociable and made good eye contact. Dr. LaFromboise reported the claimant seemed grateful that he was coming to therapy and he realized his depression was clearing up. The affect was euthymic and mood was better.

*Id.* at 21-22.

With the exception of his consultative examinations in 2005 and 2007, two mental and two physical, the record indicates that plaintiff received no medical treatment for any physical or mental impairment between his alleged onset date in February 2002 and this six-month period in 2008. Further, Dr. LaFromboise's treatment records do not document any particular functional limitations associated with plaintiff's mental and physical ailments; nor do they contain a single medical opinion regarding plaintiff's ability to mentally or physically perform the normal tasks associated with working. Instead, Dr. LaFromboise's treatment of plaintiff's mental and physical ailments was primarily limited to prescribing medications. *Id.* at 193-200. Moreover, Dr. LaFromboise's records show that, as a result of her short-term treatment, plaintiff's depression was "clearing up" and "getting closer to euthymic"[2] as of June 2008. *Id.* at 193.

---

[2] "Euthymic" is defined as "[r]elating to, or characterized by, euthymia," and "euthymia" means "[m]oderation of mood, not manic or depressed." *Stedman's Medical Dictionary* 627 (27th ed. 2000).

-8-

In sum, all we have from Dr. LaFromboise is a general conclusion that plaintiff is "permanently disabled," without any supporting residual functional capacity assessments[3] or other specific findings regarding actual functional limitations.[4]  This conclusion provides little guidance because of its uncertain medical meaning, and extends into an assessment of interrelated medical, educational, and vocational factors beyond the expertise of most physicians. Given these shortcomings, the ALJ did not err in assigning only "limited weight" to Dr. LaFromboise's opinions.

## B. Adverse Credibility Determination

The ALJ found that plaintiff was not credible to the extent that his statements concerning his symptoms were inconsistent with the residual functional capacity determined by the ALJ.  *See* Aplt. App., Vol. 2 at 20. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."

---

[3]     At the hearing before the ALJ, plaintiff's counsel told the ALJ that he was "anticipating" that Dr. LaFromboise would provide a mental residual functional capacity assessment form for plaintiff.  *See* Aplt. App., Vol. 2 at 230-31.  As a result, the ALJ left the administrative record open for ten days following the hearing "to receive that record."  *Id.* at 231.  However, there is no such record in the administrative record that is before this court.

[4]     As noted above, Dr. LaFromboise did state that plaintiff is "easily confused and has poor ability to concentrate on conversation of any depth."  Aplt. App., Vol. 2 at 202.  The ALJ took into account the former limitation by limiting plaintiff's residual functional capacity to "simple, repetitive tasks," *id.* at 18, while the latter limitation finds no support in Dr. Lafromboise's treatment records as the doctor never mentioned any difficulties in maintaining a conversation.

*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks

omitted). But "[f]indings as to credibility should be closely and affirmatively

linked to substantial evidence and not just a conclusion in the guise of findings."

*Id.* (internal quotation marks omitted).

The ALJ's main findings in support of his adverse credibility determination

were as follows:

> The claimant has described daily activities which are not limited to
> the extent one would expect, given the complaints of disabling
> symptoms and limitations. At one point or another in the record,
> either in forms completed in connection with the application and
> appeal, medical records or reports, or in the claimant's testimony, the
> claimant has reported the following activities of caring for his own
> personal needs, fixing meals for himself, performing the household
> chores for himself, mowing the lawn and visiting with close friends.
>
> As far as medical care, the claimant has not generally received
> the type of medical treatment one would expect for a totally disabled
> individual, and the treatment the claimant has received for the
> allegedly disabling impairments has been essentially routine and
> conservative in nature. With regard to medication side effects,
> although the claimant has alleged various side effects from the use of
> the medications, the medical records, such as office treatment notes,
> do not corroborate those allegations. . . . The record fails to
> demonstrate the presence of any pathological clinical signs,
> significant medical findings, or any neurological abnormalities which
> would establish the existence of a pattern of pain of such severity as
> to prevent the claimant from engaging in any work on a sustained
> basis.

Aplt. App., Vol. 2 at 23.

Because the medical evidence in this case is so sparse, we do not need to

delve into plaintiff's allegations regarding his activities of daily living or his

-10-

medication side effects to affirm the ALJ's adverse credibility determination.

Simply put, there are only two limited periods of time since plaintiff's onset date in February 2002 when he has received medical treatment: (1) the treatment he received from Dr. LaFromboise from January 2008 until June 2008, *see* Aplt. App., Vol. 2 at 193-200; and (2) the treatment he received from "OU Physicians -Tulsa Family Medicine" from September 2008 until January 2009, *id.* at 211-27. None of these medical records document any specific physical or mental functional limitations that would preclude the sedentary residual functional capacity, limited to simple, repetitive tasks, found by the ALJ. Rather, as the ALJ found, plaintiff's medical treatment "has been essentially routine and conservative."[5] Aplt. App., Vol. 2 at 23. Thus, we conclude that substantial evidence supports the ALJ's adverse credibility determination.

---

[5]     According to plaintiff, the lack of medical evidence in this case is attributable to the fact that "he couldn't afford to go to the doctor." Aplt. Opening Br. at 33; *see also id.* ("The ALJ ignores that affordability may explain Claimant's failure to seek a physician's advice and receive less conservative treatment."). This argument is without merit. Plaintiff succeeded in obtaining extensive medical treatment from Dr. LaFromboise and the OU physicians, and he has provided no evidence that he "sought to obtain [additional] low-cost medical treatment" or that he has "been denied medical care because of [his] financial condition," *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992); *cf. Threet v. Barnhart*, 353 F.3d 1185, 1191 n.7 (10th Cir. 2003) (indicating "that inability to pay may provide a justification for [the] claimant's failure to seek treatment" when there is evidence that the claimant sought and was refused treatment).

**C. Residual Functional Capacity Determination**

Finally, plaintiff claims the ALJ erred by not including certain additional impairments in his residual functional capacity determination. *See* Aplt. Opening Br. at 20-22 (discussing diminished and painful range of motion of spine, weak heel/toe walking, weak grip strength, hypertension, history of rectal bleeding, dry mouth from medications, and headaches). We agree with the Commissioner, however, that plaintiff "has failed to show that any of the [additional] impairments impact his ability to perform sedentary work. . . . Nor has [plaintiff] pointed to medical evidence which would support his allegations of work-related limitations." Aplee. Br. at 29-30. Accordingly, we see no error in the ALJ's residual functional capacity determination.

The judgment of the district court is **AFFIRMED**.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge