FILED
United States Court of Appeals
Tenth Circuit

March 1, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

KATHY A. SISSOM,

      Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,[*]

      Defendant-Appellee.

No. 12-6131
(D.C. No. 5:11-CV-00289-F)
(W.D. Okla.)

**ORDER AND JUDGMENT**[**]

Before **ANDERSON** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit
Judge.

Kathy A. Sissom appeals from an order of the district court affirming the

Commissioner's decision denying her applications for disability benefits and

---

[*]     In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure,
Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant-appellee in
this action.

[**]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

supplemental security income benefits under the Social Security Act. We exercise jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), and reverse and remand for further proceedings.

## I.     Background

Ms. Sissom injured her right knee in September 2004 while employed as a housekeeper. She sought medical treatment and ultimately had arthroscopic surgery on her knee in February 2005. She continued to have knee pain which was determined to be due to mild degenerative changes. She also later complained of other ailments including lower back pain, shoulder pain, hip pain, bilateral hand numbness, and carpal tunnel syndrome for which she also sought medical treatment. She ultimately filed for disability and supplemental security benefits in July 2008. She was fifty three years old at the time of her application. Ms. Sissom has a high school education and has worked for brief periods of time as a housekeeper, cashier/checker, and deli manager.

The Commissioner denied Ms. Sissom's applications initially and on reconsideration. After a de novo hearing before an administrative law judge (ALJ), the ALJ issued his decision in November 2009, finding Ms. Sissom not disabled at step four of the controlling five-step sequential analysis. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining five-step process for evaluating claims for disability benefits). The ALJ confirmed that Ms. Sissom had not worked during the period from her alleged onset of disability, September 30, 2004, through her date last

insured, December 31, 2009, but noted brief employment as a housekeeper in 2009. He found that Ms. Sissom had the following severe impairments: degenerative disc disease; status post right knee arthroscopy in 2005; degenerative joint disease in the right knee; mild left carpal tunnel syndrome and right ulnar neuropathy; diabetes mellitus; hypertension; atherosclerotic vascular disease; and nicotine addiction. But he concluded that these impairments did not meet or equal the listings for presumptive disability.

The ALJ also found Ms. Sissom not credible and determined that her impairments left her with a residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), with some postural limitations and moderate mental limitations. Relying in part on associated inquiries to the vocational expert (VE) who testified at the hearing, the ALJ concluded that Ms. Sissom could still perform her past relevant work (PRW) as a housekeeper or cashier/checker and thus was not disabled.

Ms. Sissom's request for review was denied by the Appeals Council, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). She then sought judicial review of the Commissioner's decision. The district court affirmed the Commissioner's denial of benefits, and Ms. Sissom now appeals.

## II.     Discussion

"In reviewing the [Commissioner's] decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted).  Rather, "[w]e review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (citation omitted) (internal quotation marks omitted).

Ms. Sissom raises three challenges to the Commissioner's decision:  (1) the ALJ failed to apply the correct legal standards in evaluating the opinion of her treating physician, Dr. Jameson; (2) the ALJ's RFC determination is not supported by substantial evidence; and (3) the ALJ did not conduct a proper step four analysis.[1]

---

[1]     She also appears to assert error by the magistrate judge and the district court judge.  "[W]e independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted).  Therefore, although we have considered Ms. Sissom's arguments concerning error by the magistrate judge and the district court judge in the context of evaluating her claims that the ALJ erred, we do not expressly address her claims of error by the magistrate judge or the district court judge.

**A. Treating Physician Evaluation**

Ms. Sissom first argues that the ALJ did not properly evaluate the opinion of Dr. Jameson, her treating physician. According to Ms. Sissom, the ALJ "misapprehended the record and considered Dr. Jameson [as] merely a[n] worker's compensation physician" and, as such, failed to accord him the deference due to a treating physician's opinion. Aplt. Op. Br. at 25. She also argues the ALJ failed to apply the correct legal standards under *Watkins* in his evaluation of Dr. Jameson's opinion.

"An ALJ must evaluate every medical opinion in the record" but the weight accorded to such "opinion[s] will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). A "treating physician's opinion is given particular weight because of his unique perspective to the medical evidence" and because a "medical professional *who has dealt with a claimant and his maladies over a long period of time* will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Doyal*, 331 F.3d at 762 (internal quotation marks omitted). Thus, a relationship of both duration and frequency is required for a treating relationship, *see id.*, which is evidenced by the Social Security Administration's regulations defining a "treating source" as someone

> who provides you, or has provided you, with medical
> treatment or evaluation and who has, or has had, an

ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with [a physician] when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).

20 C.F.R. §§ 404.1502, 416.902.

When analyzing the opinion of a treating physician then, the ALJ first considers "whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is consistent with the other substantial evidence in the record. *Watkins*, 350 F.3d at 1300 (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If so, the ALJ must give the opinion "controlling weight." *Watkins*, 350 F.3d at 1300. If the opinion is not entitled to controlling weight, the ALJ should next weigh the opinion considering the six factors[2] in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), *Watkins*, 350 F.3d

---

[2] These factors include:

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (internal quotation marks omitted).

- 6 -

at 1300-01, and determine "whether the opinion should be rejected altogether or assigned some lesser weight," *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). Finally, "[i]n all cases the regulations require that the ALJ give good reasons in the notice of determination or opinion for the weight that is given the treating physician's opinion." *Doyal*, 331 F.3d at 762 (internal quotation marks omitted).

In this case, it is unclear whether the ALJ considered Dr. Jameson to be a treating physician. Ms. Sissom began treatment for injury to her right knee with Dr. Jameson, an orthopedic surgeon, in November 2004. Ms. Sissom continued her treatment, but after conservative treatment, including physical therapy, cortisone injections, and pain medication failed, Dr. Jameson ultimately performed an arthroscopic knee surgery with partial medial meniscectomy in February 2005. Ms. Sissom continued post-operative evaluation by Dr. Jameson until April 2005.

But in evaluating the medical evidence of Dr. Jameson, the ALJ first stated in his decision that Ms. Sissom saw Dr. Jameson "on April 6, 2005, *in connection with her worker's compensation claim*," Admin. R. at 20 (emphasis added). While this appears to be an accurate statement, upon review we cannot determine whether the ALJ's evaluation of Dr. Jameson's opinion was somehow tainted by a perception that Dr. Jameson was simply a workers' compensation physician. The decision is unclear because while the ALJ did not expressly designate Dr. Jameson as a "treating physician," the ALJ also did not state or suggest that Dr. Jameson was not one by stating, for example, that Ms. Sissom's treatment with Dr. Jameson was fleeting,

infrequent, or not the type of treatment required for her condition. *See* 20 C.F.R. §§ 404.1502, 416.902. And contrary to the Commissioner's suggestion, the fact that Dr. Jameson was seen in connection with a workers' compensation claim does not in and of itself mandate a finding that Dr. Jameson is not to be considered a treating physician.

The ALJ's treatment of Dr. Jameson's opinions is further confounding because the decision is limited to an analysis of Dr. Jameson's final treatment note of April 6, 2005. The ALJ stated as follows:

> Dr. Jameson noted the claimant's functional capacity evaluation seemed to indicate the claimant would be able to perform sedentary work with no lifting over 10 pounds. Dr. James [sic] opined that these restrictions were "a little bit stringent, and I believe that the patient would be able to lift certainly twenty to thirty pounds on a regular basis. The primary concern is going to be her functioning on her feet for long periods of time and this is going to cause pain secondary to her degenerative changes; therefore I believe that she would require a desk job but I do not believe this would restrict her from being able to lift heavy objects."

Admin. R. at 20. In concluding his evaluation, the ALJ stated that he "considered the opinion of Dr. Jameson, but assigned greater weight to the opinions of non-examining State agency physicians. Examinations by Dr. Brennan [a consultative examiner] in October of 200[6] and in November of 2008 revealed normal range of motion, symmetric reflexes, and no evidence of sensory loss." *Id.*

While it is evident that the ALJ did not give Dr. Jameson's opinion "controlling weight," he did not articulate what weight, if any, he gave to

Dr. Jameson's opinion. He simply "assigned greater weight" to the opinions of the non-examining agency physicians. The ALJ also did not state whether Dr. Jameson's opinion was unsupported or inconsistent with other substantial evidence, thereby precluding controlling weight. But even if Dr. Jameson's opinion is not entitled to controlling weight, the ALJ must consider the pertinent factors and "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). And if the opinion is rejected completely, the ALJ must give "specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 (internal quotation marks omitted).

We are unable to determine what weight the ALJ assigned Dr. Jameson's opinion. It is also unclear if the ALJ's conclusory reference to the non-examining agency physicians and the consultative examinations performed by Dr. Brennan in 2006 and 2008 constitute a rejection of Dr. Jameson's opinion because the ALJ does not expressly state one way or the other. While the ALJ did not err in considering the opinions of the non-examining agency physicians and consultative examiners, "[t]he opinion of [a consultative] examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all," *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). If the ALJ intends to reject the opinion of Dr. Jameson in favor of the non-examining physicians, he must provide a legally sufficient explanation for doing so, which he did not.

In sum, we cannot say that the ALJ's decision is sufficiently specific to make clear to us the weight the ALJ gave Dr. Jameson's opinion and the reasons for that weight. *See Watkins*, 350 F.3d at 1301. And we are not in a position to presume that the ALJ applied the correct legal standards. We must therefore remand because we cannot meaningfully review the ALJ's determination without sufficient findings. *See id*.

**B. Step Four Analysis**

Ms. Sissom's second and third arguments are related in that they both allege errors regarding step four of the sequential analysis. Step four is comprised of three phases.

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), . . . and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. . . . In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. . . . At each of these phases, the ALJ must make specific findings.

*Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (alterations in original) (citation omitted) (internal quotation marks omitted). And those findings must be supported by substantial evidence. *See Watkins*, 350 F.3d at 1299.

**1. Phase One Analysis**

Ms. Sissom first argues that the ALJ's RFC determination is not supported by substantial evidence. "In determining a claimant's physical abilities, the ALJ

- 10 -

should . . . assess the nature and extent of the claimant's physical limitations and then determine the claimant's residual functional capacity for work activity on a regular and continuing basis." *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (brackets omitted) (internal quotation marks omitted). This involves consideration of the claimant's "impairment(s), and any related symptoms ... [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ's RFC assessment is made based on all the evidence in the case record, both medical and non-medical. *See* 20 C.F.R. §§ 404.1545(a)(1), (3), 416.945(a)(1), (3). The ALJ concluded that Ms. Sissom had an RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b),[3] but that she was restricted to only occasionally climbing,

---

[3]     Light work is defined in the regulations as follows:

> [it] involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

balancing, stooping, kneeling, crouching, and crawling.[4]

Ms. Sissom claims a light-work RFC is not supported by substantial evidence because Drs. Jameson and Metcalf opined that Ms. Sissom is limited to a desk job or sedentary job. And further that a vocational rehabilitation evaluation in August 2005 limited her to a sedentary job. We do not reach the merits of this argument because it may be affected by the ALJ's treatment of this case on remand, in particular, the ALJ's evaluation of Dr. Jameson's opinion. *See*, *e.g.*, *Watkins*, 350 F.3d at 1299 (declining to review claim that RFC was not supported by substantial evidence because remand for reconsideration of legal error regarding evaluation of treating physician's opinion may affect other issues in case).

## 2. Phase Two Analysis

Ms. Sissom further asserts that the ALJ erred as a matter of law in his phase two analysis by failing to make required findings regarding Ms. Sissom's PRW, and instead delegating this task to the VE. She claims that this error runs afoul of our decision in *Winfrey*. We agree.

At phase two, "the ALJ must make findings regarding the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1024. To make such findings, an "ALJ must obtain adequate factual information about those work

---

[4] The ALJ also determined that Ms. Sissom had some moderate mental limitations but that she can understand, remember, and carry out simple and complex work instructions in a work related environment. Ms. Sissom does not challenge the ALJ's findings regarding her mental limitations as part of his RFC assessment.

demands which have a bearing on the medically established limitations." *Id.* And such information regarding work demands may be obtained from the claimant herself, her employer, or another informed source. *See* SSR 82-62, 1982 WL 31386, at *3 (1982). This the ALJ did not do.

The ALJ requested information from the VE regarding Ms. Sissom's PRW. The VE testified simply that Ms. Sissom's past work as a housekeeper was "light in physical demand and unskilled,"[5] Admin. R. at 51, that her past work as a cashier/checker was "light in physical demand and semi-skilled,"[6] *id.*, with a specific vocational preparation (SVP) of two, and that her past work as a deli manager was "light in physical demand and skilled at the [SVP] 5 level,"[7] *id.* The ALJ's written findings regarding Ms. Sissom's PRW are simply a reiteration of the VE's testimony regarding the exertional level and skill level of Ms. Sissom's PRW.

---

[5] Unskilled work, among other things, is "work which needs little or no judgment to do simple duties . . . [which] may or may not require considerable strength . . . and [requires] little specific vocational preparation and judgment." 20 C.F.R. §§ 404.1568(a), 416.958(a).

[6] Semi-skilled work, among other things, requires "some skills but does not require doing . . . more complex work duties." 20 C.F.R. §§ 404.1568(b), 416.958(b).

[7] Skilled work, among other things, requires "qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced." 20 C.F.R. §§ 404.1568(c), 416.958(c).

But this limited testimony by the VE is insufficient to determine the physical and mental work demands of Ms. Sissom's past employment. The ALJ failed to develop the record with "factual information" regarding the actual work demands of Ms. Sissom's PRW. *Winfrey*, 92 F.3d at 1024 (internal quotation marks omitted). For example, the ALJ determined that Ms. Sissom had some postural limitations, including only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. Yet the ALJ did not inquire of Ms. Sissom the physical demands of her PRW as a housekeeper, cashier/checker, or deli manager that would have a bearing on these physical limitations.[8] Similarly, though the ALJ determined Ms. Sissom had moderate mental limitations, which included moderate abilities to carry out simple and detailed instructions, to complete a normal workday without interruptions from psychologically based symptoms, and to perform at a consistent pace, there is no evidence concerning the mental demands of her PRW and the bearing these would have on her mental limitations. The ALJ therefore failed to develop the record and to make the required findings concerning Ms. Sissom's PRW.

Although the ALJ's RFC determination on remand may or may not be the same, we caution the ALJ to make adequate findings regarding the physical and

---

[8]     Regarding Ms. Sissom's PRW as a housekeeper, although she testified that her duties as a housekeeper were to "scrub the baseboards, clean out all the cabinets, wash walls, wash ceilings, [and] clean floors," Admin. R. at 31, there is no evidence concerning how often her PRW as a housekeeper involved climbing, balancing, stooping, kneeling, crouching, and crawling and for what duration of time she performed each of those activities.

mental demands of Ms. Sissom's PRW. Our intent here is not to dictate any result regarding Ms. Sissom's RFC or the ALJ's findings regarding Ms. Sissom's PRW, but simply to assure that the ALJ makes the necessary specific findings and "that the correct legal standards are invoked in reaching a decision based on the facts of this case." *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988). This, in return, will ensure that appellate review of the ALJ's decision is not only possible but meaningful. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

### 3. Phase Three Analysis

Ms. Sissom also claims legal error with the ALJ's phase three analysis. At phase three, "the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Winfrey*, 92 F.3d at 1023. Here, the ALJ did not conduct an appropriate analysis at phase two and, therefore, his findings at phase three of the analysis were naturally compromised.

But additionally, the ALJ erred in delegating his fact-finding responsibilities to the VE, which we have expressly discouraged. *See id*. at 1025. Because the scope of jobs at step four is limited to the claimant's PRW, it is feasible for an ALJ at this step to make specific findings about the mental and physical demands of the jobs at issue and determine whether the claimant can still meet those demands. *Id*. An "ALJ may rely on information supplied by the VE at step four, [but] the ALJ himself must make

the required findings on the record, including his own evaluation of the claimant's ability to perform [her] past relevant work." *Id.*

At the hearing, however, without describing Ms. Sissom's actual work demands, the ALJ posed to the VE a hypothetical and asked the VE to assume light work, and an individual of Ms. Sissom's age and education, with postural limitations of occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and with Ms. Sissom's moderate mental limitations. The ALJ asked if this hypothetical person could perform any of Ms. Sissom's PRW, to which the VE gave his conclusory opinion that the work of a housekeeper and cashier/checker could be performed but that that of a deli manager could not. In his written decision, the ALJ did not make any factual findings comparing Ms. Sissom's limitations to the demands of her PRW. The ALJ just stated that the VE was presented with a hypothetical concerning an individual with Ms. Sissom's limitations and the VE testified that such an individual could perform Ms. Sissom's PRW. *See* Admin. R. at 21-22.

We agree with Ms. Sissom that the ALJ erroneously delegated his fact-finding responsibilities to the VE. The ALJ merely adopted the VE's opinion that Ms. Sissom was not precluded from performing her PRW. "When, as here, the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes places in the VE's head, we are left with nothing to review." *Winfrey*, 92 F.3d at 1025. We conclude the ALJ's step four analysis is legally

flawed. Because we have previously determined that the matter must be reversed and remanded, we have considered the legal errors of the ALJ's step four analysis in order that they may be addressed appropriately on remand.

### III.    Conclusion

The judgment of the district court is reversed, and the case is remanded with instructions to remand to the Commissioner for further proceedings in accordance with this order and judgment.

Entered for the Court


Bobby R. Baldock
Circuit Judge