**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 20, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

HERBERT GERARD JONES,

    Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant - Appellee.

No. 15-3193
(D.C. No. 6:14-CV-01311-JWL)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

Herbert Gerard Jones appeals from the district court's order affirming the

Commissioner's decision denying his application for Social Security disability

benefits.  Mr. Jones applied for these benefits with a protected filing date of

July 12, 2011 and a date last insured of December 31, 2011.  He alleged that he

became disabled on June 9, 2010 due to his need for a pacemaker, sleep apnea, and

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

swelling in his legs. The agency denied his application initially and on reconsideration.

On November 30, 2012, Mr. Jones received a de novo hearing before an administrative law judge (ALJ). The ALJ determined that he had the severe impairments of obesity, peripheral artery disease, and cardiac dysrhythmias but that his impairments, considered singly or in combination, did not meet or medically equal a listed impairment. The ALJ assessed his residual functional capacity (RFC) as follows:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that he can lift 20 pounds occasionally and 10 pounds frequently; can stand and/or walk about 6 hours out of an 8 hour workday, with normal breaks; can sit for about 6 hours out of an 8 hour workday, with normal breaks; and push and/or pull the same weights; except the claimant must alternate between sitting, standing, and walking every 20 minutes; cannot use foot controls; and cannot reach overhead with the left arm.

R. at 36 (boldface omitted).

The ALJ found that Mr. Jones could return to his past relevant work as a program worker and was therefore not under a disability. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

2

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing process). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *See id.* at 751 n.2. This case was decided at step four, and the burden of proving that he could not perform his past relevant work therefore remained with Mr. Jones.

Because he is proceeding pro se in this appeal we liberally construe Mr. Jones's filings but do not serve as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). We consider only those arguments adequately presented for our review, *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), and do not consider issues raised for the first time in a reply brief, *Cordova v. City of Albuquerque*, 816 F.3d 645, 650 n.1 (10th Cir. 2016).

### 1. RFC Assessment

Mr. Jones argues that the ALJ failed to link her RFC assessment to the medical evidence and failed to show how the evidence supported her findings. An "ALJ is charged with carefully considering all the relevant evidence and linking [her] findings to specific evidence." *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000). Her "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

The ALJ's narrative discussion of her RFC assessment appears on pages five through eight of her decision. *See* R. at 36-39. In this narrative, the ALJ thoroughly

discussed the medical evidence, Mr. Jones's testimony, and the medical and non-medical opinions. She explained how specific record evidence supported individual elements of her RFC assessment. The ALJ also gave reasons for rejecting both lesser and greater limitations on specific functions than those she adopted as part of the assessment. She sufficiently articulated the reasons supporting her decision and adequately tied the findings in her RFC assessment to the record evidence. Mr. Jones's argument on this point therefore lacks merit.

### 2. Evaluation of Christie Yourdon's Medical Opinion

The ALJ gave "only some weight" to the medical opinion of Christie Yourdon, PAC, a physician's assistant who treated Mr. Jones. *Id.* at 38. Mr. Jones argues the ALJ should have (1) accepted Ms. Yourdon's conclusion that he needed to frequently elevate his legs during the workday; (2) considered and addressed the required factors for assessing a physician's assistant's opinion; and (3) re-contacted Ms. Yourdon for clarification of her opinion.

The ALJ rejected Ms. Yourdon's requirement that Mr. Jones must frequently elevate his legs during the workday. She noted that Mr. Jones's edema was generally described as mild or minimal in the medical record, had improved with treatment, and appeared to be well-controlled with medication and the use of medical stockings. *See id.* at 37-38. She thus adequately explained her rejection of the purported limitation. Our record review reveals that the reasons she gave were supported by substantial evidence.

4

As a physician's assistant, Ms. Yourdon was not an "acceptable medical source" under the Social Security regulations. *See* 20 C.F.R. § 404.1513(d)(1) (identifying physician's assistants as "other sources" rather than "acceptable medical sources"). Although the ALJ should evaluate opinions from medical sources who are not acceptable medical sources by using the applicable factors for weighing opinion evidence, *see* SSR 06-03p, 2006 WL 2329939, at *4 (Aug. 9, 2006), not every factor will apply in each case, *id.* at 5, and "the ALJ's decision is sufficient if it permits us to follow the adjudicator's reasoning," *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) (internal quotation marks omitted). The ALJ essentially accepted Ms. Yourdon's limitations on lifting, sitting, and standing, finding them "generally consistent or less restrictive than the limitations" in her RFC assessment. R. at 38. But she rejected Ms. Yourdon's requirement that Mr. Jones must frequently elevate his legs. As we have explained, the ALJ gave adequate reasons for rejecting that limitation, based on substantial evidence in the record. Thus, the ALJ adequately addressed Ms. Yourdon's opinion.

Nor was the ALJ required to re-contact Ms. Yourdon for clarification of her opinion. Under the regulations in effect at the time of the ALJ's decision,[1] if the ALJ determined that the evidence was inconsistent or insufficient to permit her to determine whether Mr. Jones was disabled, she could have taken several different actions to enhance the record, including re-contacting his medical sources. *See*

---

[1] Mr. Jones cites an outdated regulation, which provided the agency with less discretion than the currently applicable regulation to resolve conflicts, ambiguities, or deficiencies in the record. *See* Aplt. Opening Br. at 4.

5

20 C.F.R. § 404.1520b(c) (2012).  But Mr. Jones fails to show that inconsistent or insufficient evidence prevented the ALJ from determining whether he was disabled. The ALJ therefore did not err by failing to re-contact Ms. Yourdon.

### 3. Step-Four Determination

Mr. Jones next argues that the ALJ failed to make proper findings of fact at step four of the analysis concerning his ability to return to his past relevant work.  He contends that the ALJ merely adopted the analysis of these issues provided by the vocational expert (VE), without making her own required findings.

"Step four of the sequential analysis . . . is comprised of three phases." *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  "In the first phase, the ALJ must evaluate a claimant's physical and mental . . . RFC . . . and in the second phase, [she] must determine the physical and mental demands of the claimant's past relevant work." *Id.*  "In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the . . . limitations found in phase one." *Id.*  "At each of these phases, the ALJ must make specific findings." *Id.*

Mr. Jones contends that the ALJ failed to make proper findings at phases two and three of the analysis.  Concerning these phases, the ALJ stated:

> In comparing [Mr. Jones's RFC] with the physical and mental demands of [his past relevant] work, the undersigned finds that [he] was able to perform it as actually and generally performed.  The [VE] indicated [he] could perform this job under the [RFC] found in this case.  This corresponds with the Dictionary of Occupational Titles [(DOT)], which indicates this job is performed at the light exertional level, with no overhead reaching [or] use of foot controls.  Although the [DOT] does not provide specific information

6

> on alternation of positions, nothing in the [DOT] contradicts the [VE's] testimony on this issue. Furthermore, the requirements of this job, both as indicated in the [DOT] and as described in [Mr. Jones's] testimony, appear compatible with said limitation on alternation. Therefore, the undersigned finds the [VE's] testimony on this issue credible.
>
> Based on this information, the undersigned finds [Mr. Jones] can return to past relevant work under this [RFC].

R. at 40.

The ALJ made adequate findings at phase two, concluding that Mr. Jones's past relevant work required the ability to work at the light exertional level, with no overhead reaching or use of foot controls, and with the ability to alternate positions. These phase-two findings tracked the specifics of the ALJ's RFC assessment, which included the limitations relevant to phase one of the step-four analysis. *See id.* at 36. Because the ALJ's analysis and conclusion addressed Mr. Jones's ability to satisfy the job demands found in phase two, given his phase-one limitations, it also satisfied her responsibility at phase three. In addition, the ALJ did not merely delegate her analytical duties to the VE but permissibly "quoted the VE's testimony approvingly, in support of [her] own findings at phases two and three of the analysis." *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003). In sum, Mr. Jones fails to show that the ALJ erred in her step-four analysis.

### 4. Credibility Determination

Mr. Jones argues that the ALJ improperly assessed his credibility. His only specific complaint about her credibility analysis appears to be that she disregarded his testimony concerning the limitations imposed by his use of a pacemaker and his sleep apnea. In her decision, the ALJ listed the regulatory factors used to assess

7

credibility, then stated that Mr. Jones "generally reports symptoms, such as swelling, in excess of those described in [his] treatment records. He also reports problems, such as falling asleep when sitting for too long, which he does not report to his providers." R. at 37. Based on these discrepancies and the medical record, the ALJ found Mr. Jones's allegations "only partially credible." *Id.* The ALJ then thoroughly analyzed the medical record, comparing Mr. Jones's subjective complaints to his statements to his treatment providers and the objective medical evidence. *Id.* at 37-38.

> The ALJ addressed Mr. Jones's sleep apnea complaint as follows:
>
> [Mr. Jones] has been diagnosed with sleep apnea. [He] alleges he cannot stay awake. However, he was started on a CPAP machine in July 2010, around the time of his alleged onset date. He reported feeling much better after beginning treatment, has no complaints of snoring or nasal patency, falls asleep more easily and does not awaken during the night for any reason. He indicated he felt rested in the morning without headaches or congestion, and his provider felt [he] was adequately treated.

R. at 34 (citations omitted).

Mr. Jones does not identify any error in this analysis of his sleep apnea complaint. Nor does he point to any specific statements he made concerning his pacemaker that the ALJ ignored. Instead, he refers us to a medical record from 1997 that was not before the ALJ or presented to the Appeals Council, but was attached to his district-court brief.

In this record, dated December 11, 1997, Dr. Alvin Wolfe considered Mr. Jones's request for a "release to work" after implantation of his pacemaker. *Id.* at 550. He described Mr. Jones as "feeling good," with "no sym[ptoms] now," which

8

made him "happy." *Id.* But he noted that a different doctor "called & he indicated that [Mr. Jones] can work at no [heights], restricted stooping and bending, lifting & working overhead." *Id.* The record concluded that Mr. Jones was "[r]eleased to work." *Id.*

The ALJ could not have "ignored" this record because it was not part of the medical record submitted to her. But we construe Mr. Jones's argument as seeking reversal of the district court's refusal to remand to the Commissioner to consider the 1997 record. A reviewing court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). The district court denied a remand under this provision because it determined Mr. Jones had not shown good cause for failing to obtain and present the record at the ALJ hearing. We review this decision for an abuse of discretion. *See Wilson*, 602 F.3d at 1140.

The district court did not abuse its discretion by denying a remand to the Commissioner. In an effort to explain his failure to submit the record to the ALJ, Mr. Jones complains that the ALJ surprised him and his counsel by unexpectedly discounting some of his limitations in her written decision. Until he received that decision, he argues, he was unaware that he needed to submit additional documentation in support of his claim. But even after receiving the ALJ's decision, he did not submit the 1997 record, or any other new evidence, to the Appeals

9

Council.  *See id.* at 1149-50 (stating claimant must show good cause for failing to submit new evidence to the ALJ and the Appeals Council).  Thus, he did not satisfy the "good cause" requirement for a remand.[2]

### 5.  Motion to Alter or Amend

Mr. Jones argues that the district court erred by denying his "Motion to Alter or Amend Judgment and/or to Amend or Make Additional Findings and/or to Set Aside Finding(s) and For New Trial."  *See* R. at 593-98, 607-09.  His only argument on this point in his opening brief refers us to what is "argued in said pleading" or "set out [in] said pleading."  Aplt. Opening Br. at 5.  This is not adequate appellate argument, particularly where Mr. Jones's motion raised eight claims of error, supplemented by a separate reply brief in district court.  *See, e.g.*, *Fulghum v. Embarq Corp.*, 785 F.3d 395, 410 (10th Cir.) (deeming appellate argument concerning denial of motion for reconsideration waived, where appellants merely incorporated by reference arguments made and documents filed in the district court

---

[2] The district court found that the 1997 record was "material" within the meaning of § 405(g).  "Evidence is material if the [Commissioner's] decision might reasonably have been different had the new evidence been before him when his decision was rendered."  *Wilson*, 602 F.3d at 1148 (brackets and internal quotation marks omitted).  We have some doubt the 1997 record was material within this definition.  First, it predated Mr. Jones's alleged onset date by over a decade.  Second, it is unclear from the record whether the post-surgical restrictions on stooping, bending, lifting, and working overhead, which were expressed only in a hearsay report about what another doctor said over the telephone, were intended to be permanent.  Finally, as the Commissioner points out, Mr. Jones actually performed his past relevant work as a program worker in 2001 to 2003, *after* the 1997 restrictions were imposed.

10

and did not specifically explain how denial was an abuse of discretion), *cert. denied*, 136 S. Ct. 537, *and* 136 S. Ct. 538 (2015). We therefore deem this argument waived.

### 6. Mrs. Jones's Statement

Mr. Jones's wife submitted a third-party function report in support of his claim. R. at 210-17. Among other things, she stated that he "[f]alls asleep often during the day," that he cannot "reach, squat, kneel or lift without difficulty," and that his "pacemaker limits physical activity." *Id.* at 211. Mr. Jones complains that the ALJ "arbitrarily discounted" this evidence. Aplt. Opening Br. at 7. But the ALJ considered and thoroughly discussed the statement, finding among other things that Mrs. Jones's lay opinions based on casual observation did not outweigh the accumulated medical evidence. *See* R. at 39. The ALJ permissibly assigned little weight to the third-party function report.

### 7. Postural Limitations in Dr. Alvarez's Opinion

Mr. Jones complains in summary fashion that his "physician, Dr. Alvarez submitted his opinion that I could do certain tasks occasionally" and then opines that "[y]ou cannot obtain and maintain substantial employment when you can only perform tasks occasionally." Aplt. Opening Br. at 7. He appears to have raised this issue in district court for the first time in his reply brief in support of his reconsideration motion. *See* R. at 608. The district court did not specifically discuss the argument, but elsewhere in its decision cited the general rule that arguments raised for the first time in a reply brief are waived. *Id.* at 615. Thus, the argument

was not adequately preserved and ruled upon in district court, and we need not consider it. *See Cordova*, 816 F.3d at 650 n.1.

But even if we were to consider it, he fails to show reversible error. The ALJ discussed this aspect of Dr. Alvarez's opinion, reasoning as follows:

> Dr. Alvarez also indicated postural, manipulative, and environmental limitations, as well as limitations on hearing, seeing, and speaking. The "frequent" limitations have no support in the record and do not correspond to any of his impairments or reported symptoms. *The "occasional" limitations, on climbing, stooping, crouching, and crawling, also do not correspond to [Mr. Jones's] impairments or his related symptoms.* Likewise, the environmental limitations do not correspond to his impairments or reported symptoms. On this basis, the undersigned gives this opinion only some weight in assessing [his] limitations.

R. at 39 (citation omitted) (emphasis added).

Mr. Jones fails to demonstrate that this analysis was erroneous.[3]

**8. Conclusion**

We affirm the judgment of the district court.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[3] Dr. Alvarez stated that Mr. Jones could only occasionally kneel, a limitation the ALJ did not address in the paragraph we have cited. But Mr. Jones does not make any specific argument that he needed to kneel to perform his past relevant work. We note also that Mr. Jones also admitted in a Work History Report filed at the agency level that his past relevant work as a program worker did not require him to climb, stoop, kneel, crouch, or crawl. *See* R. at 228, 232. Thus, any error concerning his ability to perform those functions as part of his past relevant work as he actually performed it, likely was harmless.